SECOND DIVISION
July 25, 2006

Nos. 1-05-2875 and 1-05-2876, Consolidated.

| | | |
|---|---|---|
| LAWNDALE RESTORATION LIMITED | ) | Appeal from the |
| PARTNERSHIP, BOULEVARD REALTY | ) | Circuit Court of |
| SERVICES CORP., BOULEVARD MANAGEMENT, | ) | Cook County. |
| INC., LOCAL REDEVELOPMENT AUTHORITY | ) | |
| OF LAWNDALE, INC., LASALLE BANK | ) | |
| NATIONAL ASSOCIATION A/T/U/T No. | ) | |
| 11886009, PYRAMID WEST REALTY AND | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| Cross-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACORDIA OF ILLINOIS, INC., AND | ) | |
| RALPH AULENTA, | ) | |
| | ) | Honorable |
| Defendants-Appellees, | ) | Lee Preston, |
| Cross-Appellants. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

Defendants Acordia of Illinois, Inc. (Acordia) and Ralph Aulenta (Aulenta) are insurance producers who secure insurance on behalf of their clients and receive a commission from the insurance company. The plaintiffs (Lawndale), providers of low income housing in Chicago, were Acordia's clients. Lawndale filed a complaint alleging Acordia wrongfully collected insurance premiums in excess of the premiums charged by the insurers.

Lawndale's complaint contains counts alleging fraud and breach of fiduciary duty; it also seeks an accounting. Lawndale moved for partial summary judgment on portions of Count I, the fraud count, alleging, among other things, a violation of section 507.1 of

the Insurance Code. 215 ILCS 5/507.1 (West 2000) (repealed by P.A. 92-386 § 10, eff. Jan. 1, 2002, replaced by 215 ILCS 5/500-80 (West Supp. 2002)).

The trial court denied the motion and certified two questions for interlocutory appeal, pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)). We agreed to answer the two questions. After closer examination, we have decided to answer only one of them, the question that asks whether Acordia's insurance compliance self-evaluative audit document is protected from disclosure in this case. We hold it is not.

FACTS

In its fraud count, Count I, Lawndale alleges Acordia provided insurance brokerage services in its capacity as an insurance producer. An insurance producer is "an individual who solicits, negotiates, effects, procures, renews, continues or binds policies of insurance covering property or risks located in Illinois." 215 ILCS 5/491.1 (West 2000) (repealed by P.A. 92-386 § 10, eff. Jan. 1, 2002, replaced by 215 ILCS 5/500-10 (West Supp. 2002)). Aulenta, the president of Acordia, was personally involved in providing insurance brokerage services to Lawndale.

In paragraph 8 of the fraud count, under the "Facts" section, Lawndale sets out former section 507.1 of the Illinois Insurance Code. Under section 507.1, an insurance producer may not receive compensation from a client without memorializing the arrangement in a separate written document signed by the client, clearly specifying the amount or extent of the fee. Lawndale contends Acordia collected amounts in excess of the actual cost of insurance coverage without disclosing the true cost of the insurance. In paragraph 8, Lawndale alleges these amounts constitute fees received in violation of

the Insurance Code.

From 1990 through 1999, Lawndale says, Acordia obtained insurance policies for Lawndale and misrepresented the cost of the premiums. The amounts of the inflated premiums were stated in various documents. Lawndale repeatedly says Acordia made "false and fraudulent representations, pretenses, and promises" concerning the cost of insurance and premiums. Based on the representations, Lawndale paid the excess premiums. Acordia intentionally concealed its scheme to defraud Lawndale by sending false premium notices, binders, invoices, and declaration pages to Lawndale and its agents. As a direct and proximate result of Acordia's alleged fraud, Lawndale was damaged in an amount exceeding $50,000. Lawndale also requests punitive damages for "intentional and tortious conduct."

In its breach of fiduciary duty count, Lawndale alleges Acordia was required to use Lawndale's funds solely for the purpose of purchasing insurance coverage. In paragraph 20, Lawndale cites section 507.1 of the Insurance Code to support its claim of fiduciary duty. Lawndale alleges Acordia wrongfully retained the funds received from Lawndale without disclosing the excess amounts in writing. It says Acordia used the funds for purposes other than securing insurance coverage, in violation of the Code. Lawndale requests damages in excess of $50,000.

Lawndale filed a motion for partial summary judgment directed only at portions of Count I. In the motion, Lawndale said Aulenta was indicted on 14 counts of money laundering, mail fraud, and engaging in monetary transactions with illegally obtained proceeds. In January 2004, Aulenta stipulated in a plea agreement to having defrauded

Lawndale out of $1,718,162. He admitted he "styled the excess premium payments from Lawndale as a fee to Acordia or its predecessor entity, but never disclosed to Lawndale that he was charging it a fee or the fee amount, even though he admits this was improper." Citing section 507.1 of the Insurance Code, Lawndale requested partial summary judgment in the amount Aulenta admits he overcharged Lawndale plus interest. Lawndale did not allege any elements of fraud in its motion, nor is fraud mentioned in the motion.

In response, Acordia contended Lawndale's motion for partial summary judgment is based solely on section 507.1 and not on any cause of action appearing in the complaint. Acordia contended section 507.1 does not provide for a private right of action.

The trial court agreed with Acordia, finding no private right of action is implied under section 507.1 of the Insurance Code. 215 ILCS 5/507.1 (West 2000). The court denied the motion for partial summary judgment.

Lawndale brought a motion to compel Acordia to disclose a document previously identified by Acordia as "Memorandum prepared by counsel re: alleged fraud in anticipation of litigation," and listed on Acordia's privilege log as Item 20 ("Document 20"). The document is a memorandum prepared by Acordia's outside counsel describing the results of a 1999 internal company-wide audit of Acordia's accounts. The memorandum is directed to Acordia and the Illinois Department of Insurance.

The court granted Lawndale's motion to compel, finding defendant waived the self-evaluative privilege under section 155.35 of the Insurance Code. 215 ILCS

4

5/155.35 (West 2000).  The court based its decision on a prior ruling in another case.  In Village of Rosemont v. Acordia of Illinois, Inc., No. 01 L 016214 (April 23, 2003), the trial court found Acordia had waived its privilege by voluntarily disclosing to the Department of Insurance the same document involved in this case.  That order was not appealed.

The trial court certified the following two questions for appeal, pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)):

(1) "whether plaintiffs have an implied private right of action for Acordia's alleged violations of Section 507.1 of the Illinois Insurance Code;"

(2) "whether Acordia's disclosure of the document subject to Plaintiffs' Motion to Compel to the Illinois Department of Insurance waived any privilege accorded to the document pursuant to the Illinois Insurance Compliance Self-Evaluative Privilege Act, 215 ILCS 5/155.35, the work-product doctrine (IL Supreme Court Rule 201(b)(2)), or both, or was otherwise required to be disclosed."

We decline to answer question (1).  Our answer to question (2) is "yes."

DECISION

I. Private Right of Action under Section 507.1

It is clear that Lawndale's complaint does not allege a private right to damages under section 507.1.  We believe the more interesting question is whether Lawndale may use section 507.1 to prove its fraud and breach of fiduciary counts.  However, our review is limited to the question certified by the trial court, and we may not rule on the propriety of any underlying order.  Hayes v. Wilson, 283 Ill. App. 3d 1015, 1018, 670 N.E.2d 867 (1996).

5

1-05-2875 & 1-05-2876, Cons.

If the question certified by the trial court calls for a hypothetical answer with no practical effect, we should refrain from answering it. We granted certification based on a misapprehension of the pleadings in this case. The question of whether a private right of action exists came up in connection with the trial court's denial of plaintiffs' motion for partial summary judgment. That motion was directed only to portions of Count I. Count I alleges a scheme to defraud. The plaintiffs are not seeking damages simply for violation of the statute. The certified question is general, overbroad, and the answer to it has little to do with the vitality of Count I. Count I is a fraud count, not a "separate written document" count. We do not see how answering the question would materially advance the ultimate termination of the litigation, as required by Rule 308(a).

II. Privilege

The trial court granted Lawndale's motion to compel Acordia to disclose Document 20, finding Acordia waived any privileges attached to the document. Acordia says it undertook the 1999 company-wide audit on its own initiative to assess compliance with state and local laws and identify ways to improve compliance. The parties agree Document 20 fits the definition of a "self-evaluative audit document" under section 155.35(b)(1) of the Insurance Code, but they disagree on whether Acordia waived the privilege created by the statute. Acordia contends the work-product doctrine also protects Document 20 from disclosure.

A. Section 155.35

Section 155.35 of the Illinois Insurance Code states, in pertinent part:

"(a) To encourage insurance companies and persons

6

conducting activities regulated under this Code, both to conduct voluntary internal audits of their compliance programs and management systems and to assess and improve compliance with State and federal statutes, rule, and orders, an insurance compliance self-evaluative privilege is recognized to protect the confidentiality of communications relating to voluntary internal compliance audits***

* * *

(b)(1) An insurance compliance self-evaluative audit document is privileged information and is not admissible as evidence in any legal action in any civil, criminal, or administrative proceeding, except as otherwise provided in subsections (c) and (d) of this Section***

* * *

(b)(3) A company may voluntarily submit, in connection with examinations conducted under this Article, an insurance compliance self-evaluative audit document to the Director, or his or her designee, as a confidential document under subsection (f) of Section 132.5 of this Code without waiving the privilege set forth in this Section to which the company would otherwise be entitled *** Nothing contained in this

7

> subsection shall give the Director any authority to compel a
>
> company to disclose involuntarily or otherwise provide an
>
> insurance compliance self-evaluative audit document."
>
> (Emphasis added.)  215 ILCS 5/155.35 (West 2000).

Paragraph (b)(3) drives our consideration of this issue.  The parties agree Acordia submitted Document 20 to the Department on its own initiative and not in response to an examination by the Department.  They disagree on the meaning of paragraph (b)(3) as applied to a company that voluntarily submits to the Department the results of a self-evaluative audit outside the context of an examination.

Acordia contends paragraph (b)(3), rather than mandating waiver of the privilege in the instant case, provides additional protection to an insurance company by expanding the explicit privilege for situations involving an examination by the Department.  We do not agree.

Paragraph (b)(1) sets out the privilege and protects the  creation of an insurance compliance self-evaluative audit document.  The only language in the statute that refers to sending the document anywhere is in paragraph (b)(3).  That paragraph says sending a self-audit document to the Department in connection with an examination does not waive the privilege.  The logical conclusion from paragraph (b)(3) is that sending a self-audit document to anyone, including the Department when not conducting an examination, does waive the privilege.  If the legislature had intended to protect the confidentiality of any and all disclosures to the Department, there would have been no need to include the limiting language--"in connection with examinations."

Where courts consider the existence of a non-statutory critical self-analysis privilege, they add a general proviso: "no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential, <u>and has in fact been kept confidential</u>."  (Emphasis added.)  <u>Dowling v. American Hawaii Cruises, Inc.</u>, 971 F.2d 423, 426 (9th Cir. 1992).  Because there is no common law insurance compliance self-evaluative audit privilege in Illinois, we must look to the statute creating the privilege to determine whether Acordia in fact kept the audit report confidential.

Similar statutes in other states expressly protect such disclosures whether or not they are in connection with an examination.  The Illinois legislature could have created the broader privilege, but did not.  See Mich. Comp. Laws § 500.221(5) (West 2002) ("Disclosure of an insurance compliance self-evaluative audit document to a governmental agency, whether voluntary or pursuant to compulsion of law, does not constitute a waiver of the privilege ***"); N.D. Cent. Code § 26.1-51-05(3) (1999) (same); Or. Rev. Stat. § 731.762(4) (2001) (same); N.J. Stat. Ann. § 17:23C-1(b) (West 1999) ("Voluntary compliance reviews shall be privileged and shall not be considered public records or public documents subject to inspection or examination under any statutory or common-law right to know request***"); Tex. Insur. Code Ann. § 751.251(a) (2005) ("The disclosure to the commissioner under this subchapter of a document *** does not constitute the waiver of any applicable privilege or claim of confidentiality regarding the document ***").  But see D.C. Code Ann. § 31-853(b) (2003) ("If, in connection with examinations conducted under the insurance laws, a company voluntarily submits an insurance compliance self-evaluative audit document to the

9

Commissioner ***, as a confidential document, [the privilege applies].)"

Acordia contends requiring it to disclose Document 20 would undermine the clear legislative purpose of section 155.35 and discourage insurers from undertaking the self-assessments encouraged and protected by the statute. In subsection 155.35(a), the statute provides, in part:

> "The General Assembly hereby finds and declares that
> protection of insurance consumers is enhanced by
> companies' voluntary compliance with this State's insurance
> and other laws and that the public will benefit from incentives
> to identify and remedy insurance and other compliance
> issues. It is further declared that <u>limited expansion</u> of the
> protection against disclosure will encourage voluntary
> compliance and improve insurance market conduct quality
> and that the voluntary provisions of this Section will not
> inhibit the exercise of the regulatory authority by those
> entrusted with protecting insurance consumers." (Emphasis
> added.) 215 ILCS 5/155.35(a) (West 2000).

We do not believe our reading of the statute contravenes the intent of the legislature. The statute's purpose is to encourage companies to conduct "voluntary internal audits of their compliance programs and management systems and to assess and improve compliance with State and federal statutes, rules, and orders***" 215 ILCS 5/155.35(a) (West 2000). Acordia went beyond the protections of the statute, beyond

1-05-2875 & 1-05-2876, Cons.

the "limited expansion" referred to in section 155.35(a).

Rather than keep its internal audit document confidential, Acordia chose to disclose it to the Department while under no obligation to do so. The Act was intended to protect confidential internal voluntary self-evaluative audits. It was not intended to protect audit documents that are freely disclosed to third parties, including the Department.

The legislature created a "limited expansion" of the privilege. 215 ILCS 5/155.35(a) (West 2000). The statute recognizes the self-evaluative audit privilege can be waived when the holder of the privilege shares the information with others. That is the import of the provision in (b)(3) for continuing protection when the audit is sent to the Director while an examination is ongoing. No other protection is provided to the privilege holder who decides to send the audit to another who does not come within the limitation in (b)(3). In that case, the "limited expansion" would be exceeded.

Acordia also contends generally that public policy favors disclosure to government agencies of the type of document at issue in this case. We leave the creating of public policy to the General Assembly. The legislature occupies a superior position to the judicial branch when it comes to determining public policy. Reed v. Farmers Insurance Group, 188 Ill. 2d 168, 175, 720 N.E.2d 1052 (1999).

Acordia contends other statutorily-created privileges cannot be waived under any circumstances, citing Zajac v. St. Mary of Nazareth Hospital Center, 212 Ill. App. 3d 779, 789, 571 N.E.2d 840 (1991). In that case, however, section 8-2102 of the Medical Studies Act specifically provided: " '[t]he disclosure of any such information or data,

11

whether proper, or improper, <u>shall not waive</u> or have any effect upon its confidentiality, nondiscoverability, or nonadmissibility.' " (Emphasis in original.) <u>Zajac</u>, 212 Ill. App. 3d at 789, quoting Ill. Rev. Stat. 1987, ch. 110, par. 8-2102. The wording of the statute in this case does not contain the sweeping language precluding waiver that is in the Medical Studies Act.

We are bound by the language in the statute. The "primary objective when construing the meaning of a disputed statute is to ascertain and give effect to the intent of the legislature." <u>People v. Robinson</u>, 172 Ill. 2d 452, 457, 667 N.E.2d 1305 (1996). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." <u>In re R.L.S.</u>, 218 Ill. 2d 428, 433, 844 N.E.2d 22 (2006). "When the statutory language is clear, it must be given effect without resort to other tools of interpretation." <u>R.L.S.</u>, 218 Ill. 2d at 433.

It is not our prerogative to judge the wisdom of creating a limited or partial privilege. "It is the dominion of the legislature to enact laws and it is the province of the courts to construe those laws." <u>Shields v. Judges' Retirement System of Illinois</u>, 204 Ill. 2d 488, 497, 791 N.E.2d 516 (2003).

The self-evaluative audit privilege is a creature of statute. The legislature can give it and the legislature can take it away. For example, in January 1995, the legislature created an environmental audit privilege. 415 ILCS 5/52.2 (West 1996) (repealed by P.A. 94-580 § 10, eff. Aug. 12, 2005). Ten years later, the statute was repealed--no privilege.

By the clear language of subsection 155.35(b)(3), the legislature intended that a

12

self-evaluative audit document submitted to the Department, in connection with an examination, is privileged. There is no privilege available for a company that chooses to disclose such documents to the Department in the absence of an examination.

B. Work-Product

Acordia contends Document 20 is protected from disclosure by Illinois' attorney work-product doctrine. The doctrine protects "material prepared by or for a party <u>in preparation for trial</u>" that contains "theories, mental impressions, or litigation plans of the party's attorney." (Emphasis added.) 166 Ill. 2d R. 201(b)(2). Materials are protected if they are prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation. <u>Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.</u>, 189 Ill. 2d 579, 591, 727 N.E.2d 240 (2000).

Examples of documents prepared "in preparation for trial" include:

"memoranda made by counsel of his impression of a prospective witness, as distinguished from verbatim statements of such witness, trial briefs, documents revealing a particular marshalling of the evidentiary facts for presentment at the trial, and similar documents which reveal the attorney's 'mental processes' in shaping his theory of his client's cause***" <u>Monier v. Chamberlain</u>, 35 Ill. 2d 351, 359-60, 221 N.E.2d 410 (1966).

The party claiming the privilege has the burden of showing the facts that give rise to the privilege. <u>Mlynarski v. Rush Presbyterian-St. Luke's Medical Center</u>, 213 Ill. App.

3d 427, 431, 572 N.E.2d 1025 (1991).  Privileges are strongly disfavored and must be strictly construed as an exception to the general duty to disclose.  In re Marriage of Daniels, 240 Ill. App. 3d 314, 324-25, 607 N.E.2d 1255 (1992).

Acordia says the document qualifies because it contains: an assessment by counsel of the evidence that could expose Acordia to potential liability, summaries and impressions of counsel's interviews with potential witnesses, and an organization of that evidence by counsel.  It says the document was prepared "in preparation for trial" because the audit was conducted following the discovery of irregularities in some accounts.  The audit, says Acordia, anticipated future litigation related to those accounts.

We have examined Document 20 and find no evidence the document was prepared "in preparation for trial" within the meaning of the work-product privilege.  There is nothing to indicate the document was created in anticipation of any pending or imminent litigation.  Document 20 is dated November 30, 1999.  Lawndale's lawsuit was filed November 14, 2002.  Although there is no temporal requirement for the privilege to apply, the three-year gap is further evidence the document was not prepared in anticipation of litigation or trial.  Acordia's suggestion at oral argument that the document was prepared in anticipation of the imminent Rosemont litigation is not persuasive, as Rosemont's lawsuit was filed December 18, 2001, two years after the audit document was prepared.

Illinois Supreme Court Rule 201(b)(2) "sets the parameters for the scope of discovery of work product materials."  Fischel & Kahn, 189 Ill. 2d at 590.  Here, nothing

14

1-05-2875 & 1-05-2876, Cons.

in the record tell us there was litigation to prepare for when the audit was conducted. Work product will "reveal the shaping process by which the attorney[s] [have] arranged the available evidence for use in trial as dictated by [their] training and experience." Monier, 35 Ill. 2d at 359. See also M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 504.1, at 325 (7th ed. 1999). The work-product doctrine does not apply.

CONCLUSION

We decline to address Question (1) concerning "whether plaintiffs have an implied right of action for Acordia's alleged violation of Section 507.1 of the Illinois Insurance Code" as our decision to answer the question was improvident.

Our answer to question (2)--"whether Acordia's disclosure of the document subject to Plaintiff's Motion to Compel to the Illinois Department of Insurance waived any privilege accorded to the document pursuant to the Illinois Insurance Compliance Self-Evaluative Privilege Act, 215 ILCS 5/155.35, the work-product doctrine (IL Supreme Court Rule 201 (b)(2)), or both, or was otherwise required to be disclosed"--is "Yes."

First certified question not answered; second certified question answered yes; cause remanded.

GARCIA, P.J., and SOUTH, J., concur.

15

1-05-2875 & 1-05-2876, Cons.