2016 IL App (3d) 150519

Opinion filed May 6, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| DALE A. EIZENGA, as Trustee of the Walter B. Westendorf Trust dated August 27, 1997, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Whiteside County, Illinois. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITY CHRISTIAN SCHOOL OF FULTON, ILLINOIS, an Illinois Not-For-Profit Corporation; THE CITY OF MORRISON, ILLINOIS, a Municipal Corporation; ODELL PUBLIC LIBRARY, a Local Public Library; SHRINERS HOSPITALS FOR CHILDREN, a Colorado Nonprofit Corporation; CAMP COURAGEOUS OF IOWA, an Iowa Not-For-Profit Corporation; FULTON ASSOCIATION FOR COMMUNITY ENRICHMENT (FACE), an Illinois Not-For-Profit Corporation; MORRISON EDUCATION FOUNDATION, a Private Foundation; LYNDA ENDRESS; PEGGY JEAN WEAVER; LISA MADIGAN, Attorney General of the State of Illinois; and HEIRS AT LAW OF WALTER B. WESTENDORF, deceased, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-15-0519 Circuit No. 13-CH-133 |
| Defendants | ) ) | |
| (Camp Courageous of Iowa, | ) ) | |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | |

Russell Holesinger,                          )      The Honorable
                                             )      William S. McNeal,
    Respondent and Contemnor-Appellant).  )      Judge, presiding.
                                             )

_____

        JUSTICE McDADE delivered the judgment of the court, with opinion.
        Presiding Justice O'Brien and Justice Schmidt concurred in the judgment and opinion.

_____

## OPINION

¶ 1        The plaintiff, Dale A. Eizenga, as the Trustee of the Walter B. Westendorf Trust, filed an interpleader action against numerous defendants, including Unity Christian School of Fulton and Camp Courageous of Iowa, and alleged that Westendorf's attorney, Russell J. Holesinger, exerted undue influence over Westendorf regarding the gift of nearly the entirety of the Trust estate to Unity Christian School. Holesinger refused to disclose certain documents in discovery, alleging that they were protected by the attorney-client privilege and the work product doctrine. The circuit court disagreed and ordered Holesinger to produce the documents. Holesinger appealed after he was found in contempt for failing to comply with the court's order. On appeal, Holesinger argues that the circuit court erred when it ruled that the documents were not protected by the attorney-client privilege or the work product doctrine. He also requests that we vacate the order finding him in contempt for failing to comply with the circuit court's order to disclose the documents. We affirm in part and vacate in part.

¶ 2                                FACTS

¶ 3        Westendorf created the Trust on August 27, 1997. The Trust provided that while Westendorf was living, the trustee would pay Westendorf all of the Trust's net income and any of the principal that Westendorf requested in writing. Westendorf was to act as trustee unless he died, resigned, became incapacitated, or otherwise. Eizenga was named as the successor trustee.

¶ 4    At Westendorf's death, the Trust estate was to "consist of the principal together with any accrued and undistributed income of the trust at the time of [Westendorf's] death, plus any property added to the trust estate by [Westendorf's] Will, or payable to the Trust by reason of the death of [Westendorf], reduced by the payment and gifts provided for under the preceding Articles."

¶ 5    The Trust also provided that upon Westendorf's death, $50,000 of the balance of the Trust estate would be paid to Peggy Jean Weaver, unless the balance was less than $100,000, in which instance the entire balance would be paid to her. That provision would lapse in the event that Weaver predeceased Westendorf. After that distribution, the remainder of the Trust estate was to be paid in three equal parts to Odell Public Library (in memory of Mable Baker Westendorf), Shriners Hospital for Children, and the City of Morrison (to be used by the Parks and Recreation Committee and with a focus on planting sugar maple trees in certain areas of the city).

¶ 6    The first amendment to the Trust was executed on July 16, 2004, and provided new distribution instructions. First, Westendorf's property at 223 East Main in Morrison was to be given to his friend, Lynda Endress. In the event that she predeceased him, the property was to be sold and distributed in equal shares to Shriners Hospital for Children, Camp Courageous, and the Morrison Education Foundation. After that distribution, the remainder of the Trust estate was to be paid in equal shares to those three entities. The first amendment also named Endress as successor trustee and Eizenga as second successor trustee.

¶ 7    The second amendment to the Trust was executed on November 5, 2004, and contained changes to the instructions regarding the Trust's expenses.

¶ 8        The third amendment to the Trust was executed on December 13, 2006, and provided modified distribution instructions. The Morrison Education Foundation was removed from the distribution and replaced with Unity Christian School. Also added in that distribution to Unity Christian School was the following statement:

> "It is my hope and desire that a portion of these funds be used to further the business curriculum of Unity with a special emphasis on financial planning, personal finance, and investing. I have been blessed by investing on a regular basis. I was assisted by a mentor, and I have seen the benefits of learning the skills necessary to be successful in obtaining financial freedom. The above directions are not mandatory, but they are intended to provide a direction for the use of a portion of this gift as determined by the Unity Christian School board."

¶ 9        In addition, the third amendment changed the trustee designation to Endress and Holesinger as successor co-trustees, and Eizenga as second successor trustee.

¶ 10        The fourth amendment to the Trust was executed on March 6, 2009, and provided modified distribution instructions. The property distribution to Endress was retained, but the residual balance was to be split equally between Shriners Hospital for Children and Unity Christian School. The above-quoted statement regarding the distribution to Unity Christian School was also retained.

¶ 11        The fifth amendment to the Trust was executed on June 10, 2010, and provided modified distribution instructions. The property distribution to Endress was retained, but one-third of the residual balance was to be paid to the Fulton Association for Community Enrichment (FACE),

4

and the other two-thirds to Unity Christian School. With regard to FACE, the distribution was "to be used for the maintenance, support, promotion and growth of Fulton's Heritage Canyon as a means of recognizing our ancestors for the contributions they have made for the greater good of our communities. Preserving our past helps us to remember and celebrate our heritage." With regard to the distribution to Unity Christian School, the accompanying statement was changed to read: "It is my hope and desire that a portion of these funds be used to further the business curriculum of Unity with a special emphasis on financial planning, personal finance, and investing. The above directions are not mandatory, but they are only intended to provide a possible direction for the use of a portion of this gift."

¶ 12    The sixth amendment to the Trust was executed on April 15, 2011, and provided several changes. First, with regard to distribution, the property distribution to Endress was removed and replaced with a distribution of $5,000. Second, Eizenga was named as successor trustee and Chris Hawkins as second successor trustee. Third, some changes were made to the instructions regarding the Trust's expenses.

¶ 13    The seventh amendment to the Trust was executed on October 5, 2012, and provided several changes. First, the $5,000 distribution to Endress was retained, but the remainder of the Trust estate was to be distributed to Unity Christian School. The accompanying statement regarding the distribution to Unity Christian School, as it appeared in the fifth amendment, was retained. Second, Holesinger replaced Hawkins as second successor trustee. Third, some changes were made to the instructions regarding the Trust's expenses. Fourth, a small provision was added regarding the trustee's management of Westendorf's commercial building.

¶ 14    Westendorf died on July 10, 2013, and on August 13, 2013, Eizenga filed an interpleader action regarding the Trust. Eizenga stated in the complaint that he was "well and personally

acquainted" with Westendorf, whom Eizenga did not believe to be a religious person or to have any connection to Unity Christian School. The complaint alleged that Holesinger exercised undue influence over Westendorf with regard to the Trust, as Holesinger "was and is an avid booster of the school."

¶ 15    The complaint was amended on January 29, 2014, and added more specific allegations regarding Holesinger. The complaint alleged that Holesinger was Unity Christian School's attorney and that, *inter alia*, he promised to waive his fee for administering the Trust to induce Westendorf to contribute to Unity Christian School.

¶ 16    Counterclaims were also filed by several defendants that had been listed as beneficiaries of the Trust at various times between its creation and Westendorf's death.

¶ 17    A subpoena for production of certain documents was served on Holesinger in July 2014. He refused to produce numerous documents, and he filed a motion to quash the subpoena, alleging that the documents were protected by the attorney-client privilege and the work product doctrine. In the privilege log Holesinger filed with the circuit court, he listed documents spanning from 1996 to 2014, including, *inter alia*, letters to Westendorf, notes on estate planning matters, notes from calls, notes regarding communications about potential beneficiaries of the Trust, notes on calculations and valuations, and timesheets. Nearly all of the documents that were dated after the complaint was filed in this case on August 13, 2013, were timesheets.

¶ 18    On April 10, 2015, the circuit court held a hearing on the document production matter. After hearing arguments, the court took the matter under advisement and issued a written decision five days later. The court denied Holesinger's motion to quash, finding:

> "The Court *** concludes the attorney-client privilege does
> not survive the death of Walter Westendorf as it applies to the

6

documents at issue, because privilege does not apply to communications relevant to an issue between parties who claim through the same deceased client, regardless of whether claims are by testate or intestate succession, or by *inter vivos* transaction. *Lamb v. Lamb*, [124 Ill. App. 3d 687, 693 (1984)]. This case is very similar to a will contest, but it is not a will contest. The issues in this case are between parties who claim to be the beneficiaries under the Walter Westendorf trust and amendments thereto, and interested parties are seeking to have various trust provisions set aside alleging undue influence by the settlor/decedent's attorney. In summary, this action contests the validity of certain trust amendments executed by Walter Westendorf and falls within the above exception to survival of attorney-client privilege."

The court also ruled that the work product doctrine did not apply because the documents Holesinger refused to produce "do not appear to be related to theories, mental impressions, or litigation plans prepared by Attorney Holesinger in anticipation of pending or threatened litigation."

¶ 19    Holesinger refused to comply with the circuit court's order, and on June 26, 2015, he was found in indirect civil contempt and assessed a penalty of $1 per day for any continued refusal to produce the documents.

¶ 20    Holesinger appealed.

¶ 21                                    ANALYSIS

7

¶ 22    First, Holesinger argues that the circuit court erred when it ruled that the documents were not protected by the attorney-client privilege. Specifically, he contends that the only exception to the rule that the attorney-client privilege survives the client's death exists when a will is contested. Because this case involves a trust and not a will contest, he claims the court erred when it extended the exception to a trust.

¶ 23    In relevant part, Illinois Supreme Court Rule 201(b)(2) (eff. Jan. 1, 2013) provides that "[a]ll matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure." The attorney-client privilege "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' " *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege is the exception and the duty to disclose is the rule; accordingly, the privilege should be confined as narrowly as possible. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190 (1991). Additionally, Illinois "adhere[s] to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Id.* We review *de novo* the question of whether the attorney-client privilege prohibits the disclosure of sought-after information. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 65.

¶ 24    In general, the attorney-client privilege survives death. *Swidler*, 524 U.S. at 404. However, an exception to the general rule has been recognized in testamentary contexts. *Id.* at 404-05. Both the attorney-client privilege and the testamentary exception arose from the common law (*Brunton v. Kruger*, 2015 IL 117663, ¶ 55), and the testamentary exception was

8

recognized by our supreme court in the nineteenth century. *Fossler v. Schriber*, 38 Ill. 173, 173-74 (1865); *Scott v. Harris*, 113 Ill. 447, 454 (1885) (noting that while the attorney-client privilege typically survives the client's death, "[i]n cases of testamentary disposition, the rule seems to be otherwise"); see also *Wilkinson v. Service*, 249 Ill. 146, 150-51 (1911) (holding that "[w]hile [attorney-client] communication might be privileged if offered by third persons to establish claims against the estate, when the contest is between the heirs or next of kin of the testator the rule is otherwise"); *Mason v. Willis*, 326 Ill. App. 481, 487 (1945) (noting that "although statements made by a testatrix to her attorney would be privileged if offered in evidence in a suit against her, they are not privileged after her death").

¶ 25        We acknowledge the case law in this state that has described the testamentary exception to the attorney-client privilege as applying only in the context of a will contest. See *Hitt v. Stephens*, 285 Ill. App. 3d 713, 717 (1997) (holding that "[t]he only context in which a client's death might affect the viability of the privilege is a will contest"); *DeHart v. DeHart*, 2013 IL 114137, ¶ 69 (holding that the attorney-client privilege does not survive the client's death with respect to a will); *Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶ 62 (holding that "the attorney-client privilege survives the death of the client, except in the case of a will contest" (citing *Hitt*, 285 Ill. App. 3d at 717)). However, none of these cases had to address the situation presented by this case. See *Hitt*, 285 Ill. App. 3d at 714-15 (involving a replevin action in which the sole heirs of the decedents sought the disclosure of the estate files from the decedents' law firm 13 and 40 years after the estates were closed); *DeHart*, 2013 IL 114137, ¶¶ 69-73 (involving a will contest and "claims of testamentary capacity and undue influence"); *Adler*, 2013 IL App (1st) 121066, ¶¶ 62-63 (refusing to apply the testamentary exception in a legal malpractice case in which the a trustee of a decedent's trust sought the disclosure of

communications the decedent's attorney made to a third party). In fact, a closer examination of the exception leads us to the conclusion that it is the rationale behind it that is of paramount importance, rather than the question of whether the situation involves a will contest.

¶ 26        In *United States v. Osborn*, the United States Court of Appeals stated:

> "The rationale behind the exception to the general rule is that the privilege itself is designed for the protection of the client, and it cannot be said to be in the interests of the testator, in a controversy between parties all of whom claim under the testator, to have those confidential communications of the testator and attorney excluded which are necessary to a proper fulfillment of the testator's intent."
>
> *United States v. Osborn*, 561 F.2d 1334, 1340 n.11 (9th Cir. 1977).

See also *Glover v. Patten*, 165 U.S. 394, 406-08 (1897); *Swidler*, 524 U.S. at 404-05.

¶ 27 While we are unaware of any Illinois cases that have applied the testamentary exception to the attorney-client privilege in a case involving a trust, there is ample persuasive authority for doing so.

¶ 28        The Restatement (Third) of the Law Governing Lawyers states that "[t]he attorney-client privilege does not apply to a communication from or to a decedent relevant to an issue between parties who claim an interest through the same deceased client, either by testate or intestate succession or by an inter vivos transaction." Restatement (Third) of the Law Governing Lawyers § 81 (2000); see also Michael H. Graham, Graham's Handbook of Illinois Evidence § 505.7, at 372 (10th ed. 2010) (stating that the attorney-client privilege "does not apply to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by *inter vivos*

10

transaction").  The comments to section 81 of the Restatement (Third) are instructive: comment (a) states that this section "is relevant, for example, *in will-contest and similar litigation*." (Emphasis added.)  Restatement (Third) of the Law Governing Lawyers § 81 cmt. a (2000). Comment (b) states:

> "The exception in the Section is sometimes justified on the ground
> that the decedent would have wished full disclosure to facilitate
> carrying out the client's intentions.  The dispute might involve
> either testate or intestate succession or claims arising from inter
> vivos transactions to which the decedent was a party.  The witness
> will most often be the decedent's lawyer, who is in a position to
> know the client's intentions and whose testimony ordinarily will
> not be tainted by personal interest.  Suppressing such testimony
> would hamper the fair resolution of questions of testator intent *in*
> *will-contest and similar types of cases*.  It is therefore probable that
> the exception does little to lessen the inclination to communicate
> freely with lawyers [citation]."  (Emphasis added.)  Restatement
> (Third) of the Law Governing Lawyers § 81 cmt. b (2000).

This rationale has been repeatedly cited in cases discussing the testamentary exception.  See, *e.g.*, *Swidler*, 524 U.S. at 404-05; *Lamb v. Lamb*, 124 Ill. App. 3d 687, 693 (1984); *Zook v. Pesce*, 91 A.3d 1114, 1120 (Md. 2014) (noting that the rationale behind the exception was to ensure the decedent's donative intent was honored, and holding that the exception can apply "in a dispute between putative heirs or devisees under a will or trust").  Our supreme court also reiterated this rationale in *DeHart*: "a decedent would (if one could ask him) forgo the privilege

11

so that the distribution scheme he actually intended can be given effect." *DeHart*, 2013 IL 114137, ¶ 69 (citing *Hitt*, 285 Ill. App. 3d at 717-18, and *Glover*, 165 U.S. at 406-08, as supporting authority).

¶ 29     Even if a will contest is the primary circumstance under which this exception can apply, certainly it is not the only circumstance. In this case, Westendorf created the Trust during his life—an *inter vivos* transaction. He changed the beneficiaries of the Trust several times before he died. A dispute has arisen between former beneficiaries of the Trust and the current beneficiary, Unity Christian School, based on undue influence that attorney Holesinger allegedly exerted over Westendorf. The documents Holesinger claims are privileged are relevant to the resolution of that dispute. As the circuit court indicated, this case presents no material difference between a will contest for purposes of the testamentary exception to the attorney-client privilege. Because this case fits squarely within the purview of the rationale behind the testamentary exception (see, *e.g.*, *Swidler*, 524 U.S. at 404-05; *DeHart*, 2013 IL 114137, ¶ 69), we hold that the circuit court did not err when it ruled that Holesinger's documents were not protected by the attorney-client privilege.

¶ 30     Second, Holesinger argues that the circuit court erred when it ruled that his documents were not protected by the work product doctrine. Holesinger claims that the documents he withheld include his "notes, memos, and correspondence to the client relative to legal services *** which documents contain Holesinger's confidential theories and mental impressions." In addition, Holesinger claims that the documents he withheld also include "invoices, timesheets, and calendar entries, which contain Holesinger's thoughts and mental impressions in that they reflect the legal work he decided to perform on Westendorf's behalf, which decisions could only be made by an attorney."

¶ 31       In relevant part, Illinois Supreme Court Rule 201(b)(2) (eff. Jan. 1, 2013) provides that "[m]aterial prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." We review *de novo* the question of whether the work product doctrine protects the disclosure of sought-after information. *Shields v. Burlington Northern & Santa Fe Ry. Co.*, 353 Ill. App. 3d 506, 508 (2004).

¶ 32       In *Waste Management*, our supreme court stated the following with regard to the work product doctrine:

> "The work-product doctrine provides a broader protection than the attorney-client privilege, and is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts. See *Hickman v. Taylor*, [329 U.S. 495 (1947)].
>
>     Illinois has taken a narrow approach to the discovery of attorney work product. The overriding considerations under our discovery rule are ascertainment of the truth and expedited disposition of the lawsuit. (*Monier v. Chamberlain*, [35 Ill. 2d 351, 361 (1966)]). Thus, under our rule, ordinary work product, which is any relevant material generated in preparation for trial which does not disclose 'conceptual data' (*Monier*, 35 Ill. 2d at 360), is freely discoverable (134 Ill. 2d R. 201(b)(2)). Opinion or 'core' work product, which consists of materials generated in preparation for litigation which reveal the mental impressions,

13

opinions, or trial strategy of an attorney, is subject to discovery upon a showing of impossibility of securing similar information from other sources. *Monier*, 35 Ill. 2d at 360." *Waste Management*, 144 Ill. 2d at 196.

¶ 33 Our review of the record in this case reveals no error in the circuit court's decision that the work product doctrine did not apply to the documents listed in Holesinger's privilege log. Again, the privilege log listed documents spanning from 1996 to 2014, including, *inter alia*, letters to Westendorf, notes on estate planning matters, notes from calls, notes regarding communications about potential beneficiaries of the Trust, notes on calculations and valuations, and timesheets. Essentially the only documents that were dated after the complaint was filed in this case on August 13, 2013, were timesheets. As the circuit court found, there is no indication that any of the documents listed in the privilege log were created in preparation for any impending or pending litigation. We are unpersuaded by Holesinger's claims to the contrary, and we therefore hold that the circuit court did not err when it ruled that Holesinger could not assert the work product privilege with regard to the documents listed in the privilege log. See, *e.g.*, *Lawndale Restoration Ltd. Partnership v. Acordia of Illinois, Inc.*, 367 Ill. App. 3d 24, 32-33 (2006).

¶ 34 Lastly, Holesinger asks this court to vacate the order finding him in contempt for failing to comply with the circuit court's order to disclose the documents.

¶ 35 "A finding of contempt against an attorney will not stand if the attorney acted in good faith to serve his client and the court." *Adler*, 2013 IL App (1st) 121066, ¶ 72. Contempt proceedings are an appropriate method of challenging the propriety of a circuit court's discovery ruling. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002). In this case, the issue of

14

whether the exception to the post-death viability of the attorney-client privilege extends to trusts was unclear and the basis for the contempt order against Holesinger was an apparent good faith attempt to serve his client and the court. Accordingly, we vacate the circuit court's order finding Holesinger in contempt. See *Adler*, 2013 IL App (1st) 121066, ¶ 72.

¶ 36                                    CONCLUSION

¶ 37        The judgment of the circuit court of Whiteside County is affirmed in part and vacated in part.

¶ 38        Affirmed in part and vacated in part.