STEVE F. MLYNARSKI, Indiv. and as Special Adm'r of the Estate of Rita C. Mlynarski, Deceased, Plaintiff-Respondent, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER, Defendant-Contemnor.

First District (6th Division)   No. 1—90—0778

Opinion filed April 26, 1991.

Arnstein & Lehr, of Chicago (John L. Ropiequet and Laura Lynne Puk, of counsel), for appellant.

Raymond P. Concannon, Ltd., of Chicago (Raymond P. Concannon and Michael P. Concannon, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

The defendant, Rush-Presbyterian-St. Luke's Medical Center, appeals from a finding of contempt for the defendant's refusal to produce a document requested by the plaintiff.

Rita C. Mlynarski was admitted to Rush-Presbyterian-St. Luke's Medical Center and had surgery on March 12, 1987. On April 1, 1987, while she was still in the hospital, she slipped and fell in or near the bathroom and was injured. She died on September 12, 1987, and her husband, Steve Mlynarski, filed an action in her name on October 16, 1987.

In its answers to the plaintiff's interrogatories, the defendant identified all eyewitnesses to the occurrence, all persons at the scene immediately before and after the occurrence, all persons with knowledge of the facts of the plaintiff's injuries, and all persons who rendered treatment on the date of the occurrence.

The plaintiff filed supplemental interrogatories. Supplemental interrogatory number 2 sought the identity of the person within the defendant's risk management department who participated or claimed to have participated in the investigation of the accident. Interrogatory number 3 asked for the name and address of each person with whom members of the defendant's risk management department had communicated. Interrogatory number 7 asked for any statements, memoranda, interviews or writings concerning communications between the defendant, risk management, the defendant's attorneys or any other persons relative to the allegations of the complaint. The defendant objected to interrogatories 2 and 3 on the ground that they were overly broad, burdensome and sought information that was not relevant. It objected to interrogatory number 7 on the grounds that the information sought was protected by both the attorney-client privilege and the work-product privilege. The plaintiff filed a motion to compel the defendant to answer the interrogatories.

After a hearing, the judge overruled the defendant's objections to interrogatories numbers 2 and 3, and ordered the defendant to answer them. The judge also ordered the defendant to provide the documents requested by interrogatory number 7 to the court for *in camera* inspection. The defendant filed its answers to interrogatory numbers 2 and 3; the answers revealed that Ruth Goldsberry, a coordinator in the defendant's office of risk management, had investigated the decedent's fall. The answers also disclosed the names and addresses of all but two of the persons that Goldsberry had contacted during the course of her investigation.

The judge conducted an *in camera* inspection of three documents requested by interrogatory number 7. She ruled that the first document, a letter from Goldsberry to the defendant's outside counsel, was privileged. She also ruled that the second document, a memo from Goldsberry to the defendant's general counsel, was privileged because it contained a discussion about settlement.

The judge ruled that a memorandum from Goldsberry to the defendant's general counsel was not privileged and ordered the defendant to produce it. The memorandum consisted of summaries of statements from persons Goldsberry had interviewed. The judge explained that, although the statements contained in that memorandum were not verbatim statements of witnesses, the memorandum did not involve Goldsberry's "mental machinations."

The defendant's attorney sent a letter to the plaintiff's attorney indicating that the defendant did not intend to comply with the judge's order to produce the April 16 memorandum. The plaintiff's attorney filed a motion requesting the judge to compel the defendant's compliance with the order or to impose sanctions. On February 22, 1990, the judge granted the plaintiff's motion to compel, and the defendant was held in contempt of court and fined $1. The issue is whether the disputed memorandum is protected by the attorney-client or work-product privilege. In effect, the judge ruled that it was protected by neither. The defendant contends that it is protected by both.

The attorney-client privilege protects confidential communications made by a client to an attorney while seeking legal advice. (134 Ill. 2d R. 201(b)(2).) When the client is a corporation, however, the question becomes which employees of the corporation are entitled to the protection of the privilege when they communicate with the corporation's attorneys. The Illinois Supreme Court has adopted what has been described as a "control group" test. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 432 N.E.2d 250.) The court held that a rule limiting the privilege to employees forming "top man-

agement" was too narrow and adopted an expanded version of the control-group test:

> "We believe that an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority, is properly within the control group. However, the individuals upon whom he may rely for supplying information are not members of the control group. \*\*\* This approach, we think, better accommodates modern corporate realities and recognizes that decision-making within a corporation is a process rather than a final act." (89 Ill. 2d at 120.)

Under the control-group test, there are two tiers of corporate employees whose communications with the corporation's attorney are protected. The first tier consists of the decision-makers, or top management. The second tier consists of those employees who directly advise top management, and upon whose opinions and advice the decision-makers rely. 89 Ill. 2d at 120.

■■ ■ The party who claims the privilege has the burden of showing the facts which give rise to the privilege. (*Claxton v. Thackston* (1990), 201 Ill. App. 3d 232, 559 N.E.2d 82.) The question before us, therefore, is reduced to this: Has the defendant maintained its burden of showing that Goldsberry was a member of the control group? In support of its position the defendant submitted the affidavit of Sandra R. Jones, the director of the office of risk management and Goldsberry's superior. Goldsberry held a position of coordinator. In her affidavit Jones said the following:

> "All settlement decisions made with respect to litigated and non-litigated claims against the Medical Center are made jointly by Mr. Brown [the defendant's general counsel], affiant [Jones] as Director, Office of Risk Management and the Coordinator in the Office of Risk Management who was assigned to handle the particular matter. Both affiant and the Coordinator assigned to any such matter are consulted from time to time both by Mr. Brown and by outside counsel to determine what legal action the medical center will pursue with respect to particular claims. The advice and opinions of affiant and the assigned coordinator form part of the basis for any decision to settle or litigate the matter."

The defendant argues that the affidavit of Jones provides the necessary proof that Goldsberry was a member of the control group. The plaintiff has not responded to this argument. We are bound by the

record before us. The affidavit is unrebutted, and the legal sufficiency of the affidavit was not challenged in the trial court or in this court. Consequently, it is part of the record for our consideration, and we may not ignore it. (See *Healy v. Owens-Corning Fiberglass* (1989), 187 Ill. App. 3d 182, 543 N.E.2d 110; *Miller v. St. Charles Condominium Association* (1986), 141 Ill. App. 3d 834, 491 N.E.2d 125.) We note that two other documents, a memorandum from Goldsberry to the defendant's general counsel and a letter from Goldsberry to outside counsel, were not discoverable, the letter on the ground that it discussed settlement. The letter, at least, gives rise to some inference that Goldsberry participated and contributed to settlement discussions. We judge, therefore, based on the record before us, that the defendant submitted sufficient proof to establish that Goldsberry was part of the control group and that the Goldsberry memorandum was protected by the attorney-client privilege. In so doing, we do not mean to say that the sufficiency or the accuracy of affidavits such as that of Sandra Jones may not be tested in the trial court before a judge rules on whether information is discoverable. The extent to which Goldsberry participated in the decision-making process, the nature of her opinions, although not the specific opinions themselves, and the weight given her opinions should themselves be subject to inquiry.

■ We turn now to the question of whether the work-product doctrine is applicable. The Illinois work-product doctrine is narrower than the Federal work-product doctrine. Under the Federal rules, all work performed by an attorney or his agent in anticipation of litigation is protected from discovery. (See Fed. R. Civ. P. 26(b)(3).) In Illinois, however, only "opinion work product," matter which discloses the theories, mental impressions or litigation plans of a party's attorney, is protected from discovery. See 134 Ill. 2d R. 201(b)(2).

■ In *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 221 N.E.2d 410, the Illinois Supreme Court defined work product as only those documents "which reveal the shaping process by which the attorney has arranged the available evidence for use in trial as dictated by his training and experience." (35 Ill. 2d at 359-60.) The doctrine applies not only to documents prepared by an attorney, but also to documents prepared by the attorney's agent or investigator. See *United States v. Nobles* (1975), 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160.

The precise issue before us was before the supreme court in *Consolidation Coal*:

"We consider today whether counsel's notes and memoranda of employees or witnesses' oral statements which are not verba-

tim and are not reviewed, altered, corrected, or signed by these individuals are protected work-product." *Consolidation Coal,* 89 Ill. 2d at 109.

The defendant in *Consolidation Coal* refused to produce various memoranda and notes of interviews with witnesses prepared by in-house counsel. The supreme court conducted its own *in camera* examination of the documents (as we did here) and recognized that the notes represented a mixture of factual material and the attorney's work product in the form of his conclusions, characterizations and summaries. The court expressed strong disapproval of imposing on trial courts the burden of reviewing voluminous material and sifting from the material what is discoverable and what is not discoverable. The court concluded, "Accordingly we hold that attorneys' notes and memoranda of oral conversations with witnesses or employees are not routinely discoverable." 89 Ill. 2d at 110.

The court recognized, however, that in some instances the attorney's notes might constitute the only source of certain facts, and, therefore, it created an exception to the absolute exemption otherwise granted to opinion work product in Illinois. The court held that if an attorney's notes contain a mixture of unprivileged factual material and privileged opinion work product, the notes will be subject to discovery only if a party can show that it is absolutely impossible to secure the factual information from other sources. 89 Ill. 2d at 110-11.

■ Goldsberry's memorandum is the equivalent of the attorney's notes in *Consolidation Coal.* The memorandum contains summaries of Goldsberry's conversations with witnesses; however, it does not contain any of the witnesses' verbatim statements. It was not reviewed, adopted, altered or signed by any of the witnesses. Therefore, in accordance with *Consolidation Coal,* the memorandum is protected by the work-product privilege unless the plaintiff can show that it is impossible to obtain the factual information contained in the memorandum from any other source. The plaintiff has not made such a showing; the plaintiff's attorney admitted at oral argument that he had the names and addresses of all of the witnesses interviewed by the defendant and that he could depose any or all of those witnesses himself.

We disagree with the plaintiff that *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 522 N.E.2d 273, requires a different conclusion. In that case the documents in question were letters from the defendant's risk management consultant to the defendant's risk manager discussing what transpired at meetings of the defendant's risk management committee. The appellate court held that the documents

were not subject to the work-product privilege because they did "not contain or disclose any theories, mental impressions or litigation plans" but instead were "factual statements relating to plaintiffs' medical conditions or prognoses." (167 Ill. App. 3d at 847.) We note that the trial judge in *Sakosko* redacted certain material, and we emphasize that the documents were not summaries of oral statements of witnesses. We also note that the *Sakosko* court did not mention *Consolidation Coal*.

Under the compulsion of *Consolidation Coal*, therefore, we judge that the memorandum of Goldsberry is protected from discovery by the work-product privilege and the attorney-client privilege and that the court erred in the judgment of contempt against the defendant.

For future guidance, we would add a word of caution to the defendant. The defendant's statement that its answers to interrogatories included the names of all persons that Goldsberry had interviewed is not completely accurate. The document included summaries of interviews with nurses and doctors and the daughter and husband of the deceased. The daughter and husband were not named in the answers to interrogatories. We are hard-pressed to conjure up a justification for the invocation of privilege in the case of statements made by the deceased's daughter or husband. However, *Consolidation Coal* made no distinction between witnesses, and the broad holding of *Consolidation Coal* does not, in our judgment, permit an intermediate reviewing court to create another exception to its holding. Nonetheless, we judge that, if the daughter or husband testifies, the defendant should be barred from any attempt to impeach them from statements made to Goldsberry unless the defendant makes the relevant portions of Goldsberry's memorandum available to the plaintiff before the daughter or husband testifies. (*Cf. United States v. Nobles* (1975), 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160.) If any of the other persons named in the memorandum testifies and the defendant seeks to impeach him with Goldsberry's testimony, the defendant's work-product privilege and the attorney-client privilege shall be deemed waived with respect to that witness, and the defendant may be required to turn over to the plaintiff any portion of the reports relevant to cross-examining Goldsberry. See *People v. Grier* (1980), 90 Ill. App. 3d 840, 413 N.E.2d 1316.

Judgment reversed.

RAKOWSKI, P.J., and LaPORTA, J., concur.