**Augustin A. VACCARO, Edgar Thayer and Pace Motor Sports, Inc.,**
**Plaintiffs,**

v.

**MSG (ILLINOIS), INC., Defendant.**

No. 91 C 5712.

United States District Court, N.D. Illinois, E.D.

March 31, 1992.

---

James J. Conlon, James J. Conlon & Associates, Chicago, Ill., Robert E. Meadows, R. Bruce Hurley, Sewell and Riggs, Houston, Tex., for plaintiffs.

Richard Francis O'Malley, Rabea J. Zayed, Sidley & Austin, Chicago, Ill., Theodore James Theophilos, Sidley and Austin, New York City, for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Pending before this court is Defendant's motion to compel discovery. At deposition, Defendant wanted to depose Plaintiff Augustin A. Vaccaro regarding a conversation he had with Wayne Kabak. Vaccaro failed to answer questions regarding his conversation with Mr. Kabak on the grounds of attorney-client privilege.

### Background

In July, 1986, Pace Motor Sports, Inc. ("Pace") and SRO Motor Sports Corp. ("SRO") formed a joint venture called SRO/Pace Promotions ("the Old Venture"). The Old Venture was in the business of promoting and producing live motorized sporting events such as supercross motorcycle races and tractor pulls. In December, 1988, SRO was dissolved and its assets were distributed equally among its two shareholders, Edgar Thayer and Augustin Vaccaro. Following the dissolution of SRO, the sole venturers of the Old Venture were Pace, Thayer and Vaccaro (the three plaintiffs in this action).

In 1989, the Old Venture sold 65% of its assets to the Madison Square Garden Corporation ("the Garden"). The unsold interest was retained by Pace (17.5%), Thayer (8.75%) and Vaccaro (8.75%). The closing of this transaction occurred on September 27, 1989 with the execution of a new joint venture agreement. The sole venturers of the New Venture were MSG (Illinois), Inc. (a wholly-owned subsidiary of the Garden, referred to herein as "MSG") and the three plaintiffs, Pace, Thayer and Vaccaro.

The Old Venturers were advised by Josephson International, Inc. ("JII") during the negotiations with MSG regarding the sale of the Old Venture's assets and the formation of the New Venture. JII served as the "exclusive financial advisor" to Pace, Thayer and Vaccaro. Marvin Josephson and Wayne Kabak, JII's in-house counsel, provided advisory services on JII's behalf during the negotiations. Through July 14, 1989 (when the letter of intent was signed), Mr. Kabak was the only lawyer assisting the plaintiffs with the transaction.

By terms of the New Joint Venture Agreement, Pace, Thayer and Vaccaro (the minority venturers) turned over effective control of the operation of the New Venture to MSG. The New Joint Venture Agreement also provides that the minority venturers possess a right to sell their respective interests in the New Venture to MSG (a right of "Extraordinary Put") in the event that MSG elected to proceed with an "Extraordinary Business" without the consent of the minority venturers. "Extraordinary Business" is defined by the New Joint Venture Agreement as any business or activity which is either outside the scope of the Venture Business or requires extraordinary capital expenditures.

In 1990, MSG negotiated a Television Program Production Agreement with GRB Entertainment on behalf of the New Joint Venture for the purpose of producing a syndicated television show. Previously, the Old Venture had presold television programs of its events before incurring the production expenses associated with programs. According to the plaintiffs, MSG's decision to enter into the television production contract was an activity requiring ex-

traordinary capital expenditures and hence was "Extraordinary Business." The minority shareholders subsequently filed suit against MSG alleging that because the production agreement constituted "Extraordinary Business," MSG was bound to purchase the minority venturers' interests in the New Joint Venture.

In December, 1990, Mr. Vaccaro contacted Mr. Josephson of JII for advice regarding his decision to exercise the Extraordinary Put and require MSG to buy his interest. Mr. Josephson advised Vaccaro that he had the right to exercise the put. Vaccaro then asked Mr. Josephson if he could ask some questions of Mr. Kabak, JII's in-house counsel. Mr. Josephson said he would not mind Mr. Vaccaro's contacting Mr. Kabak. Vaccaro then spoke with Mr. Kabak and the latter drafted Vaccaro's put letter. At his deposition, the attorney for MSG asked Vaccaro questions relating to his discussion with Mr. Kabak. Those deposition questions were objected to and MSG has moved to compel discovery.

### Discussion

Although Plaintiffs argue that the attorney-client privilege shields the Vaccaro–Kabak discussion from discovery, Mr. Vaccaro admitted at his deposition that Wayne Kabak was not his attorney:

Q: Did you speak to anyone other than Mr. Thayer about the GRB deal prior to sending this [put] letter of December 21, 1990?
A: Yes.
Q: Other than your attorney, did you speak to anyone?
A: Yes.
Q: Other than your attorney and Mr. Thayer.
A: Yes.
Q: Who did you speak to?
A: I spoke to Mr. Marvin Josephson and his attorney, Mr. Kabak.

\* \* \* \* \* \*

Q: Did you understand Mr. Kabak to be Mr. Josephson's attorney?

A: I believe it was Mr. Josephson's in-house attorney, yes.
Q: At the time you spoke to Mr. Kabak, did you understand that you were going to be paying him a fee for any advice that he was giving to you?
A: No. I did not pay him a fee. I didn't plan to pay him a fee.
Q: What is your relationship with Mr. Josephson?
A: Mr. Josephson was the negotiator for the old venture and Madison Square Garden.
Q: He negotiated on behalf of SRO Pace?
A: Yes.
Q: Is Mr. Josephson an attorney, to your knowledge?
A: Someone said he is an attorney, but—he has a law degree. But I don't know.
Q: Was it your understanding that Mr. Josephson was acting as your attorney in the context of the negotiations or your subsequent conversations with him?
A: No. No way was he acting as an attorney.
Q: When you spoke to Mr. Kabak, did you believe him to be acting as your attorney?
A: No.
Q: Did Mr. Kabak, in fact, draft the letter which is marked as Deposition Exhibit 4?
A: Yes. He dictated that to me.
Vaccaro Deposition at 65, 70.[1]

■ Because this is a diversity case in which Illinois law supplies the rule of decision, Illinois law on the attorney-client privilege also applies. Rule 501 of the Federal Rules of Evidence provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law."

■ "The attorney-client privilege applies to communications made in confidence by a client seeking legal advice of any kind to a professional legal adviser acting in

1. It appears from context that Deposition Exhib-  it 4 refers to Mr. Vaccaro's put letter.

that capacity." *Regan v. Garfield Ridge Trust and Savings Bank,* 220 Ill.App.3d 1078, 1090, 163 Ill.Dec. 605, 581 N.E.2d 759 (1st Dist.1991). According to Illinois law, this court "[i]nitially ... must determine whether [Vaccaro] and [Kabak] had established an attorney-client relationship before [it can] decide if the questions involved in this case solicited privileged information." *Cesena v. Du Page County,* 201 Ill.App.3d 96, 103, 146 Ill.Dec. 1044, 558 N.E.2d 1378 (2d Dist.1990). In other words, the attorney-client privilege exists only if an attorney-client relationship exists.[2]

Vaccaro, as the party claiming the privilege, bears the burden of showing the facts that give rise to the privilege. *Mlynarki v. Rush–Presbyterian–St. Luke's Medical Center,* 213 Ill.App.3d 427, 157 Ill.Dec. 561, 572 N.E.2d 1025 (1st Dist.1991). The fact that Vaccaro, a layman, asked Wayne Kabak, an attorney, questions that apparently solicited legal advice is insufficient to create an attorney-client relationship.

In this case, Vaccaro admitted at deposition that Kabak was not his attorney. In his affidavit Vaccaro stated that "[he] viewed [Mr. Kabak's] legal assistance as part of the services provided by Marvin Josephson." Marvin Josephson's services, through his company JII, were financial advisory services, not legal services. In light of these facts, Vaccaro has failed to carry his burden that he and Mr. Kabak had established a lawyer-client relationship. Merely asking legal questions of someone else's lawyer does not create a lawyer-client relationship such that the attorney-client privilege attaches (even if that "someone else" is one's financial advisor).

Another reason to conclude that the lawyer-client privilege does not prevent MSG from deposing Vaccaro regarding his conversation with Mr. Kabak is that Vaccaro has not provided any evidence to indicate that his communications with Kabak were intended to be confidential. Most certainly, Vaccaro's statements to Kabak were made with the expectation that Kabak would have been free to share them with his boss, Marvin Josephson, for instance. Kabak did not work for a law firm.

### Conclusion

For the foregoing reasons, Defendant MSG's motion to compel discovery with respect to Mr. Vaccaro's discussions with Wayne Kabak is granted.

---

2. There is, of course, one familiar modification to this rule. "[W]hen an individual relates information to an attorney with a view toward retaining him, even if the attorney rejects the representation and the attorney-client relationship never arises, the usual duties as to privileged communications apply to the information disclosed." *Torres v. Divis,* 144 Ill.App.3d 958, 964, 98 Ill.Dec. 900, 494 N.E.2d 1227 (2d Dist. 1986).