MOLLY YOULE, Plaintiff-Appellee, v. RAYMOND RYAN *et al.*, Defendants (Kevin M. Miller, Contemnor-Appellant).

Fourth District   No. 4—03—1025

Argued May 11, 2004.—Opinion filed June 25, 2004.

378

Timothy G. Shelton (argued), of Hinshaw & Culbertson, of Chicago, for appellant.

Sean M. Britton (argued), of Ronald Tulin, Ltd., of Charleston, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On August 12, 2002, plaintiff, Molly Youle, filed a two-count complaint against defendants, Raymond Ryan, M.D., and Sarah Bush Lincoln Health Center, for negligence related to plaintiff's gallbladder removal surgery (cholecystectomy). Plaintiff filed a supplemental request to produce the contents of Dr. Ryan's surgical database, a request with which Dr. Ryan refused to comply. On March 5, 2003, plaintiff filed a motion to compel Dr. Ryan to produce the database contents. On August 14, 2003, after hearing, the trial court granted plaintiff's motion. On September 4, 2003, Dr. Ryan filed a motion to reconsider. On October 28, 2003, the court denied his motion to reconsider. At hearing, it found Dr. Ryan's counsel, contemnor, Kevin Miller, in willful contempt of court and sanctioned him by imposing a fine of $100. On appeal, Miller argues that (1) the court erred in granting plaintiff's motion to compel where the contents of Dr. Ryan's surgical database would not reasonably lead to discoverable information and (2) the contempt finding and fine should be vacated. We reverse in part, vacate in part, and remand with directions.

On August 12, 2002, plaintiff filed a medical malpractice complaint against Dr. Ryan and Sarah Bush Lincoln Health Center, alleging Dr.

Ryan was negligent in performing a cholecystectomy on her in that he *transected her common bile duct during surgery.*

On January 28, 2003, Dr. Ryan testified in a discovery deposition that he maintains a surgical database of all the cases in which he has participated since he began practice. As to cholecystectomies, he listed the name of the patient, the date of the surgery, the referring physician, the type of anesthesia, the type of operation, the pathology involved, and any unique complications for particular cases.

Plaintiff filed a supplemental request to produce, specifically requesting a print version of Dr. Ryan's database, to include information related to all the cholecystectomy procedures he had ever performed, with the patient names redacted. Dr. Ryan refused to comply, stating that the request was not reasonably calculated to lead to the discovery of admissible evidence. On March 5, 2003, plaintiff filed a *motion to compel* production of the database contents, arguing that the contents were reasonably calculated to lead to the discovery of admissible evidence because "[e]vidence of prior surgeries engaged in by Defendant Ryan which are similar enough to this surgery, could show evidence of a pattern or practice of negligence on the part of Defendant Ryan."

On August 14, 2003, the trial court held a hearing on plaintiff's motion to compel. The court granted the motion as to the database contents, with the exception that any reference to any patient or any other information that might reasonably allow for the identification of a patient be redacted. The court further prohibited plaintiff's counsel from providing a copy of the requested information to any person except a retained expert witness or anyone whom plaintiff reasonably expected to use as an expert witness in the case.

Dr. Ryan filed a motion to reconsider, reasserting that a "pattern or practice of negligence" was an improper ground on which to grant the motion. At hearing, plaintiff's counsel acknowledged his motion "was probably inartfully drafted" but that the reason the trial court granted the motion was that it "believed that the discovery in question may lead to admissible evidence in the form of evidence which would impeach Dr. Ryan's experience, which is one of the foundational bases for expert testimony." He was concerned that "Dr. Ryan's experience may not be up to par" to be qualified to testify as to the relevant standard of care. Dr. Ryan asked the trial court to conduct an *in camera* inspection of the database contents, contained within a relatively short document, before ruling on his motion to reconsider. The court declined and denied Dr. Ryan's motion to reconsider. It found that the document and information therein were not discoverable to show a "pattern or practice of negligence by Dr. Ryan." However, the court further concluded:

"I do believe the documents and information are discoverable because it is reasonable for the plaintiff to anticipate that Dr. Ryan may be called to testify on his own behalf as an expert witness and to offer testimony that the professional conduct engaged in by him met with the applicable standard of care and that he, as an expert in the field, is familiar with the applicable standard of care.

I cannot foresee if the doctor were called to testify that the jury wouldn't consider his educational background, his training, his experience, and other matters that go to his qualifications, and in that regard, I think the discovery of the documents and information in question is reasonably related to the question of the doctor's foundation and background as an expert witness.

Now, hypothetically, of course, I have no idea what the doctor might say, but he might say he's familiar with the standard of care, that his procedures met with the applicable standard of care, that he's done similar procedures on any number of occasions, and he did the procedure in question just like he always did it, and maybe the plaintiff will be able to show from an examination of the records that that's not so, that he did something different in this particular instance.

Of course, what I just said constitutes speculation but I think it's reasonably calculated to lead to discovery of relevant information by allowing the plaintiff to look at these records."

After the trial court denied defendants' motion to reconsider, defendants again requested that the court enter an order imposing a sanction under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)), thereby permitting defendants an immediate appeal under Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)). Miller indicated his intention not to comply with the court's order compelling production of the database contents and asked the court to enter a contempt finding. The court found Miller in contempt and assessed a sanction of $100.

■ Miller first argues that the trial court erred in granting the motion to compel where the contents of Dr. Ryan's surgical database would not reasonably lead to discoverable information. Where an individual appeals a contempt judgment imposed for violating a discovery order, that discovery order is also subject to appellate review. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54, 765 N.E.2d 1002, 1007 (2002). Discovery rulings are generally within the trial court's discretion and we will not disturb such decisions absent an abuse of that discretion. *D.C. v. S.A.*, 178 Ill. 2d 551, 559, 687 N.E.2d 1032, 1036-37 (1997). "However, the right to discovery is limited to disclosure of matters that will be relevant to the case at hand in order to protect against abuses and unfairness, and a court should deny a discovery request where there is insufficient evidence that the

requested discovery is relevant or will lead to such evidence." *Leeson v. State Farm Mutual Automobile Insurance Co.*, 190 Ill. App. 3d 359, 366, 546 N.E.2d 782, 787 (1989).

■ Miller first contends that the trial court abused its discretion in failing to conduct an *in camera* inspection of the database contents prior to ordering production of the information. We agree. Supreme Court Rule 201(b)(1) limits discoverable material to that "relevant to the subject matter involved in the pending action." 166 Ill. 2d R. 201(b)(1). Trial courts may supervise any or all parts of the discovery process. 166 Ill. 2d R. 201(c)(2). This power includes the authority to review discovery materials *in camera* to determine any possible relevance. See *In re Estate of Bagus*, 294 Ill. App. 3d 887, 891, 691 N.E.2d 401, 404 (1998).

■ Here, the trial court had the prerogative to conduct a firsthand inspection of the disputed document to determine the relevance, if any, of the database information. The failure to do so resulted in the court making a decision as to relevance without all of the pertinent facts before it. Further, because the court did not examine the document, defendants were unfairly limited in making their case that the material was irrelevant for all purposes or was otherwise protected from disclosure.

Applying the liberal discovery definition of relevance, we question how hundreds of medical records of third-party patients could have any bearing on whether Dr. Ryan committed medical malpractice in this particular case or how such information would lead to relevant matters. See, *e.g.*, *Hilgenberg v. Kazan*, 305 Ill. App. 3d 197, 205, 711 N.E.2d 1160, 1166 (1999) (medical records of testifying expert's patient were properly excluded as a collateral matter and did not interfere with opposing party's right to cross-examination); *Leeson*, 190 Ill. App. 3d at 366, 546 N.E.2d at 787 (rejecting argument that 2,100 unrelated medical claims were material and relevant to the reasonableness and necessity of medical expenses in the case at bar). The fact that Dr. Ryan might testify as an expert witness on his own behalf would not make the information any more or less relevant.

However, should the trial court conclude, after conducting such an inspection of the document, that the information contained therein, or a portion thereof, is relevant for discovery purposes, the court should state the grounds of relevance of that information.

Even if the trial court deems the database contents to be relevant upon inspection, a privilege may apply to the extent the information contains third-party medical records. See *Glassman v. St. Joseph Hospital*, 259 Ill. App. 3d 730, 745-46, 631 N.E.2d 1186, 1198-99 (1994) (affirming denial of motion to compel discovery of medical records of

third-party patients who underwent surgery by the same surgeons and who experienced difficulties similar to the plaintiff); *In re D.H.*, 319 Ill. App. 3d 771, 774, 746 N.E.2d 274, 277 (2001) (rejecting argument for exception to physician-patient privilege of third-party patients where physician is sued for malpractice); *Ekstrom v. Temple*, 197 Ill. App. 3d 120, 130, 553 N.E.2d 424, 430 (1990) (statutory privilege barred disclosure of medical records of third-party patients even where names and identification numbers were redacted).

While defendants did not explicitly claim that the database contents were privileged, the record shows that they couched a privilege argument in terms of the need for confidentiality of the records of third-party patients' medical treatment. A party claiming that discovery material is privileged may not merely assert that the matter is confidential and privileged; rather, he should support such a claim "either by producing the materials for an *in camera* inspection or by submitting affidavits setting forth facts sufficient to establish the applicability of the privilege to the particular documents." *Menoski v. Shih*, 242 Ill. App. 3d 117, 121, 612 N.E.2d 834, 836-37 (1993). Accordingly, even if the trial court had properly determined that the information was relevant, it should have reviewed the document *in camera* to determine whether defendants' privilege claim had merit. Only by making a fully informed decision could the court fashion an appropriate discovery order by balancing the interests of plaintiff in obtaining relevant nonprivileged information against the need to promote effective professional self-evaluation by members of the medical profession in the interest of improving the quality of health care.

Under the circumstances, the trial court abused its discretion in failing to conduct an *in camera* inspection of the requested document prior to denying defendants' motion to reconsider. Accordingly, we reverse the court's judgment granting plaintiff's motion to compel and remand with directions that the court examine the database contents *in camera*.

■ As a final matter, we address the trial court's contempt order. Requesting the court to enter a contempt order is an appropriate method by which a party may test the correctness of a discovery order. *Reda*, 199 Ill. 2d at 54, 765 N.E.2d at 1007. Here, the court concluded, as do we, that Miller's decision not to comply with the court's order to produce the contents of Dr. Ryan's database was made in good faith. Miller was not contemptuous of the court's authority but merely sought appellate review of the order to produce. We therefore vacate the court's contempt order and fine.

For the reasons stated, we reverse the trial court's judgment grant-

ing the motion to compel, vacate the contempt finding and fine, and remand with directions.

Reversed in part and vacated in part; cause remanded with directions.

COOK and APPLETON, JJ., concur.