2022 IL App (4th) 210359

NO. 4-21-0359

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 19, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE BOARD OF EDUCATION OF DEERFIELD PUBLIC SCHOOLS DISTRICT NO. 109, | ) ) | Petition for Review of the Order of the Illinois Educational Labor |
| Petitioner, | ) | Relations Board. |
| v. | ) | |
| DEERFIELD EDUCATION ASSOCIATION, | ) | No. 19CA0053C |
| IEA-NEA, and THE ILLINOIS EDUCATIONAL | ) | |
| LABOR RELATIONS BOARD, | ) | |
| Respondents. | ) | |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Cavanagh and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        In October 2018, the Board of Education of Deerfield Public Schools District No. 109 (District) received complaints from concerned parents regarding one of its teachers, Jennifer Russell. At all times relevant to this appeal, Russell was represented by an exclusive collective bargaining representative, the Deerfield Education Association, IEA-NEA (Union). The District employed outside counsel, Laura Knittle, who investigated the complaints by interviewing parents, students, coworkers, and Russell.

¶ 2        In November 2018, as a result of Knittle's investigation, the District's superintendent informed Russell that he was recommending that the District issue her a "Notice of Remedial Warning." In response, the Union requested, pursuant to section 4.4 of the collective bargaining agreement (CBA), any interview notes that Knittle may have taken during the course of her investigation. The District refused to produce Knittle's notes, claiming that they were

protected from disclosure by the work product doctrine.

¶ 3    In December 2018, the District issued Russell a "Notice of Remedial Warning." That same month, the Union filed an unfair labor practice charge with the Illinois Educational Labor Relations Board (Board) against the District for not disclosing the interview notes.

¶ 4    In November 2019, in lieu of a hearing before an administrative law judge (ALJ), the parties submitted a joint statement of facts for the ALJ to consider. In September 2020, the ALJ recommended that the Union's complaint be dismissed, finding that the work product doctrine protected the interview notes from disclosure.

¶ 5    The Union filed exceptions to the ALJ's recommendation, and in May 2021, the Board overruled the ALJ, finding that the District was required to disclose Knittle's notes to the Union.

¶ 6    The District appeals, arguing that (1) the work product doctrine is a "law" within the meaning of section 4.4 of the CBA, which precludes disclosure of the witness names and interview notes, and accordingly, Knittle's interview notes are protected from disclosure by the work product doctrine, (2) the Board erred when it determined that the notes were reasonably necessary to the Union's role as exclusive bargaining representative, and (3) the Board committed clear error by concluding that the District refused to provide witness names to the Union.

¶ 7    We disagree with the District and affirm the Board's decision. However, we note that although we agree with the result of the Board's decision, we do not agree with the Board's reasoning underlying its decision and therefore affirm on other grounds.

¶ 8                                 I. BACKGROUND

¶ 9    The following information is taken from the stipulation of facts and documentary evidence submitted by the parties to the ALJ, as well as the record from the administrative

proceedings.

¶ 10      On October 27, 2018, the District's superintendent e-mailed Russell a "Notice of Investigation," informing her that several of her students' parents had lodged a complaint against her for alleged inappropriate treatment of their children while in Russell's class (parents' complaint). Specifically, according to the investigation notice, the parents alleged that Russell (1) repeatedly yelled at and criticized students, such as "telling the students something was wrong with them" whenever they did something incorrectly; (2) failed to "implement accommodations on a 504 plan with fidelity, such as denying students necessary fidgets" (see 29 U.S.C. § 794(a) (2018) (prohibiting discrimination on the basis of disability in schools that receive federal funding)); (3) lacked empathy when students were visibly distraught, such as encouraging other students to turn their backs when a student was crying; (4) reprimanded students in front of their peers; and (5) discouraged students' academic interests, such as by saying girls are not as good as boys at math.

¶ 11      The notice of investigation also provided that Russell (1) would be put on paid administrative leave for the duration of the investigation, (2) was required to attend an investigatory meeting with the District, during which she could respond to the allegations, (3) was entitled to have union representation at that meeting, and (4) was not allowed to discuss the parents' complaint or the investigation with any parents or students.

¶ 12      From October 30, 2018, through November 5, 2018, Knittle, a lawyer who "was engaged as legal counsel for [the District] for the purposes of conducting an investigation and providing legal services concerning allegations made by parents and students in the District against Russell," conducted investigatory meetings with students, parents, and District staff—including Russell—concerning the complaints. (The record does not indicate when the District hired

Knittle.) For these meetings, section 4.4 of the CBA provided, "If the District delegates non-employees to investigate any complaint against a teacher, a District administrator shall be present during any interviews *** held during the course of investigation." (However, the record is also silent regarding whether an administrator was actually present for these meetings.)

¶ 13     On November 5, 2018, Russell met with the assistant superintendent, "the UniServ Director" (union representative), and Knittle to discuss the parents' complaint. According to a letter the District later sent to Russell, during this meeting, the District "informed [Russell] of the specific allegations made against [her] and provided [her] with the opportunity to respond." (Aside from that quote, the record does not indicate what information was shared during the meeting.)

¶ 14     As a result of the information Knittle gathered during her investigation, the superintendent determined that Russell's behavior violated several of the District's policies and recommended that the District issue a "Notice of Remedial Warning."

¶ 15     Subsequently, on November 26, 2018, Russell received a letter informing her of the District superintendent's "Recommendation for Notice of Remedial Warning." The letter, in pertinent part, stated the following:

> "On October 17, 2018, a group of parents contacted the [District], via email to voice their concerns that [Russell's] alleged recent inappropriate treatment of one of [her] current fifth grade students mirrors the same type of treatment that their own children allegedly received when they were enrolled in [Russell's] classes in prior years. The parents expressed that they were concerned for the welfare of [Russell's] current students ***.
>
> * * *
>
> Thereafter, outside legal counsel conducted investigatory meetings with the

parents of nine separate students, as well as with three of the students themselves, to gather information and assess the credibility of the allegations. [(The record is not clear regarding whether the people interviewed were the same people who had made the complaints and their children.)] During these meetings the parents and students specifically detailed their concerns."

¶ 16 The letter also indicated that Russell denied the allegations but, "[g]iven the consistency of the allegations," the District doubted her credibility. In contrast, Knittle and the District found the parents and students to be credible.

¶ 17 That same day, November 26, 2018, the Union "requested Knittle's interview notes generated during the course of the investigation into the Parent Complaint and the names of the individuals interviewed." (The record does not show what the contents of these notes are, nor whether the District administrator, who was required by section 4.4 of the CBA to be at the interviews, took any notes. Similarly, the record does not state how or at what point the Union determined that interview notes existed.) The District never asserted that the interview notes did not exist but instead denied the Union's request, stating that the notes were protected by the work product doctrine and attorney-client privilege because they were created by Knittle in her role as legal counsel.

¶ 18 On December 13, 2018, the District provided Russell with a "Resolution Authorizing Issuance of a Notice of Remedial Warning" and an accompanying "Notice of Remedial Warning." The remedial warning indicated that if Russell's conduct persisted, she could face dismissal from her employment.

¶ 19 In March 2019, Russell sent a rebuttal of the Notice to the District and noted that she had not received the interview notes of parents and students. Russell also stated that the

parents' complaints had never before been brought up in an evaluation or any other setting and that, because this was a "Notice to Remedy," she was "left *** with no legal means to challenge the District's finding other than to file [her] rebuttal."

¶ 20        That same month, the Union filed an unfair labor practice charge with the Board, alleging the District violated section 14(a)(5) and, derivatively, section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1), (a)(5) (West 2018)). Section 14(a)(5) designates a refusal to bargain in good faith with the exclusive bargaining representative as an unfair labor practice. *Id.* § 14(a)(5). Section 14(a)(1) prohibits educational employers from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under [the Act]." *Id.* § 14(a)(1).

¶ 21        In July 2019, the Board issued a complaint against the District, alleging that the District failed and refused to bargain collectively in good faith with the Union by failing to give the Union witness names and interview notes pertaining to Knittle's investigatory meetings with students, parents, and district staff as required by section 4.4 of the CBA. That section provides the following with regard to investigations arising from teacher complaints:

> "The teacher shall receive prompt notice of every person who is interviewed and copies of any interview notes or documents collected during the interview to the extent not precluded by law."

¶ 22        The Union alleged that the information was "necessary for, and relevant to, the [Union's] performance of its function as the exclusive bargaining representative of [Russell]." In response, the District asserted that the interview notes were protected by the work product doctrine because they "were a mixture of statements and mental impressions considering future litigation."

¶ 23        In November 2019, the parties filed a joint stipulation of facts in lieu of presenting

witnesses at a hearing before the ALJ. The parties attached five exhibits to the joint stipulation: (1) the CBA, (2) the notice of investigation e-mailed to Russell, (3) the notice given to Russell informing her that a notice to remedy would be issued pursuant to the investigation, (4) the resolution authorizing issuance of a notice of remedial warning and the notice of remedial warning, and (5) Russell's rebuttal to the notice.

¶ 24    In September 2020, after reviewing the parties' briefs, the ALJ recommended the Union's complaint be dismissed in its entirety because the interview notes were protected by the work product doctrine. The ALJ relied on *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 432 N.E.2d 250 (1982), which held that interview notes composed by an attorney "necessarily will include the mental impressions or processes of the attorney drafting the notes." The ALJ also found that because the District believed Russell's conduct was of the type that could lead to litigation, the District hired Knittle to conduct an investigation and to advise the District as to the legal ramifications of any facts uncovered.

¶ 25    The Union filed exceptions to the ALJ's decision, arguing that (1) "neither party had any plausible reason to anticipate litigation by each other or parents," (2) even if Knittle's interview notes were protected, any verbatim statements from the parents were not protected, and (3) the interview notes were important to the Union's representation of Russell.

¶ 26    In May 2021, the Board issued its final order in which the Board overruled the ALJ's decision. In finding for the Union, the Board determined that (1) the District violated section 14(a)(5) of the Act by refusing to provide the names of the interviewed witnesses, which were not work product; (2) the complaint was not moot because, at the time of the Union's request for information, the interview notes were relevant to its representation of Russell; (3) the work product doctrine was not "law" for the purposes of the CBA; and (4) Knittle's interview notes were not

protected by the work product doctrine.

¶ 27    This appeal followed.

¶ 28    II. ANALYSIS

¶ 29    The District appeals, arguing that (1) the work product doctrine is a "law" within the meaning of section 4.4 of the CBA, which precludes disclosure of the witness names and interview notes and accordingly, Knittle's interview notes are protected from disclosure by the work product doctrine; (2) the Board erred when it determined that the notes were reasonably necessary to the Union's role as exclusive bargaining representative; and (3) the Board committed clear error by concluding that the District refused to provide witness names to the Union.

¶ 30    We disagree with the District and affirm the Board's decision. However, we note that although we agree with the result of the Board's decision, we do not agree with the Board's reasoning underlying its decision and therefore affirm on other grounds.

¶ 31    To begin, we agree with the Board's characterization of this case: "This case is about a union's right to information requested in order to represent its membership and whether the work product doctrine does not entitle the union to that information under certain circumstances."

¶ 32    The only issues we need to address to resolve this appeal are whether (1) the interview notes were reasonably necessary to the Union's representation of Russell and (2) whether those notes were privileged work product. We need not address the District's argument that the Board erred by requiring the District to provide witness names to the Union because our affirmance of the Board's decision means that the District will be required to give the Union Knittle's interview notes, which will most likely contain the names of the people Knittle interviewed.

¶ 33                    A. The Unfair Labor Practice Claim

¶ 34                         1. *The Applicable Law*

¶ 35        The underlying claim in the present case is brought under the Act. Specifically, the Union alleges that the District violated section 14(a)(5) and, derivatively, section 14(a)(1) by not disclosing Knittle's interview notes. Those sections provide the following:

>    "(a) Educational employers, their agents or representatives are prohibited from:

>        (1) Interfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act.

>                               * * *

>        (5) Refusing to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative; provided, however, that if an alleged unfair labor practice involves interpretation or application of the terms of a collective bargaining agreement and said agreement contains a grievance and arbitration procedure, the Board may defer the resolution of such dispute to the grievance and arbitration procedure contained in said agreement." 115 ILCS 5/14(a)(1), (5) (West 2018).

¶ 36        "[A]n educational employer's statutory duty to bargain in good faith includes the duty to provide the Union with information, upon request." *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 315 Ill. App. 3d 522, 528, 734 N.E.2d 69, 74 (2000) (citing *National Labor Relations Board v. Acme Industrial Co.*, 385 U.S. 432, 435-36

(1967)). The information sought must be directly relevant to the Union's function as the exclusive bargaining representative and must appear "reasonably necessary" for the performance of this function. *Id.* at 529; *Highland Community College Faculty Senate, Local 1957*, 38 PERI ¶ 101 (IELRB 2022). "The relevant standard deals with the 'probability that the desired information is relevant, and that it would be of use to the Union in carrying out its statutory duty and responsibilities.' " *Geneva Education Ass'n*, 36 PERI ¶ 75 (IELRB 2019) (quoting *Alton Education Ass'n*, 21 PERI ¶ 79 (IELRB 2005)).

¶ 37                                     2. *This Case*

¶ 38           The District first argues that the interview notes are not relevant or reasonably necessary to the Union's role as bargaining representative and that, even if they were, the request is now moot because the notice to remedy was already issued and it could not be grieved. We disagree with both arguments.

¶ 39           The Union argues that the interview notes were relevant and reasonably necessary to the Union's role as exclusive bargaining representative because (1) the Union requested the notes two weeks prior to the issuance of the notice to remedy and could have used the notes to help address the allegations against Russell, (2) the notice to remedy included directives that Russell had to follow to avoid termination, and the Union could have used the interview notes to aid with Russell's compliance, and (3) the Union could have used the interview notes to help Russell file a more responsive rebuttal to the allegations in the notice. We agree with all three arguments.

¶ 40           Nothing in the record suggests that the Board incorrectly determined that the interview notes were relevant and necessary to the Union's function. In its role as exclusive bargaining representative, it was the Union's proper function to assist and advise Russell as she

attempted to respond to the District's accusations. See 115 ILCS 5/2(c) (West 2018) (" '[L]abor organization' means an organization *** which exists for the purpose *** of dealing with employers concerning grievances, employee-employer disputes, wages, rates of pay, hours of employment, or conditions of work ***."). Although the record contains the District's summary of allegations against Russell, the allegations are certainly not detailed, and her reply to the notice to remedy demonstrates that Russell could do no more than guess—as must we—at what exactly she did to deserve the notice. Without more specificity than the District provided—for example, stating Russell "failed to honor the needs of students' 504 plan accommodations"—it is hard to see how Russell could adequately defend herself, rebut the District's allegations, or comply with the notice's requirements. Accordingly, the interview notes were relevant and reasonably necessary to the Union's function as exclusive bargaining representative.

¶ 41                                  3. *Mootness*

¶ 42          Next, contrary to the District's assertion, the Union's claim that it needed the interview notes to assist and advise Russell is not moot simply because (1) the District has already issued its remedial notice to Russell or (2) the District's decision was not subject to the contract's grievance procedures.

¶ 43          The Union's right to requested information is " 'determined by the situation which existed at the time the request was made, not at the time the Board or courts get around to vindicating that right. Otherwise, important rights under the Act would be lost simply by the passage of time and the course of litigation.' " *Chicago Board of Education*, 30 PERI ¶ 162 (IELRB 2012) (quoting *Grand Rapids Press*, 331 N.L.R.B. 296, 300 (2000)); see also *Wheaton Firefighters Union, Local 3706 v. Illinois Labor Relations Board, State Panel*, 2016 IL App (2d) 160105, ¶ 13, 58 N.E.3d 161 (refusing to hold moot a claim of bargaining in bad faith when the

union and employer subsequently settled and executed the underlying collective bargaining agreement at issue). Additionally, the Board has indicated that matters capable of repetition, yet evading review, are not moot. *Chicago Board of Education*, 30 PERI ¶ 162 (IELRB 2012). We agree with all of the above authority.

¶ 44 As we earlier discussed, the interview notes were relevant to the Union's function as exclusive bargaining representative and were reasonably necessary for the performance of that function when the Union requested the notes on November 26, 2018. Furthermore, regardless of the interview notes' utility as of that date, the fact that Russell may not have been able to file a grievance over the Notice to Remedy is of no consequence here. See *id.* ("There is an on-going relationship between the parties of which the grievance process is only a part and that relationship benefits from a free flow of information." (citing *General Dynamics Corp.*, 268 N.L.R.B. 1432, 1433 (1984))). To find the issue moot in this instance would allow the District to subvert the CBA when issuing a notice to remedy simply by withholding interview notes. Accordingly, we conclude that this issue is not moot.

¶ 45 We next address whether the interview notes are protected by the work product doctrine.

¶ 46 B. The Work Product Doctrine

¶ 47 1. *The Standard of Review*

¶ 48 As a preliminary matter, we note the parties each assert a different legal standard for our review of the Board's order concerning the work product doctrine. However, we need not definitively determine which standard applies because a finding that the work product doctrine applied in this case would constitute clear error under any standard. This is so because the record is devoid of any facts supporting the application of the work product doctrine.

¶ 49    2. *The Federal Work Product Doctrine Does Not Apply to Claims Under*

*the Act*

¶ 50    In deciding the present case, the Board relied on interpretations of the work product doctrine made by the National Labor Relations Board (NLRB). Notably, those decisions are based on the rules governing the federal work product doctrine. In doing so, the Board mistakenly substituted federal work product standards for the Illinois law that it should have applied.

¶ 51    Although the Board may properly look to the NLRB for guidance when interpreting provisions of Illinois labor law that are similar to those of the National Labor Relations Act (NLRA) (29 U.S.C. § 151 *et seq.* (2018)) (see *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 579, 839 N.E.2d 479, 486 (2005) (holding that rulings of the NLRB and federal courts construing the NLRA are persuasive authority for similar state provisions)), the question here is not one of the construction or interpretation of the Act but instead the application of the Illinois work product doctrine under that Act.

¶ 52    The NLRB has determined that the work product doctrine applies in proceedings under the NLRA. Because the NLRB is a federal agency, it applies the federal work product doctrine. See *Sprint Communications*, 343 N.L.R.B. 987 (2004) (applying federal rules of civil procedure and case law). However, because the Board is an Illinois administrative body, it must apply Illinois law. See 115 ILCS 5/5(i) (West 2018) ("The Board shall adopt, promulgate, amend, or rescind rules and regulations in accordance with the Illinois Administrative Procedure Act as it deems necessary and feasible to carry out this Act."); 5 ILCS 100/10-40(a) (West 2018) ("The rules of evidence and privilege as applied in civil cases in the circuit courts of this State shall be followed."). Accordingly, the Board should have applied—and this court will apply—the rule for

the work product doctrine set forth in Illinois Supreme Court Rule 201(b)(2) (eff. July 1, 2014), which governs discovery in general, and the cases implementing that rule.

¶ 53                                3. *The Work Product Doctrine in Illinois*

¶ 54                                        a. In General

¶ 55        "The work product doctrine *** is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts." *Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 591, 727 N.E.2d 240, 246 (2000). Like other privileges, it is "an exception to the general rule that the public has a right to every person's evidence"; it is not to be "lightly created or expansively construed." *D.C. v. S.A.*, 178 Ill. 2d 551, 562, 687 N.E.2d 1032, 1038 (1997); see also Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014) (requiring "full disclosure" regarding relevant matters except as provided in the rules); *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190, 579 N.E.2d 322, 327 (1991) ("[T]he [attorney-client] privilege is not without conditions, and we are mindful that it is the privilege, not the duty to disclose, that is the exception.").

¶ 56        We also note that case law and Rule 201(b) show that the work product doctrine applies to materials prepared by attorneys, their agents, and consultants, but not nonattorney administrators, as the Board wrote in its order in this case. See Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014) ("The identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means."); *Mlynarski v. Rush-Presbyterian-St. Luke's Medical Center*, 213 Ill. App. 3d 427, 432, 572 N.E.2d 1025, 1029 (1991) ("The [work product] doctrine applies not only to documents prepared by an attorney, but

- 14 -

also to documents prepared by the attorney's agent or investigator."). We also agree with the First District in *Mlynarski* wherein it wrote that the "Illinois work-product doctrine is narrower than the Federal work-product doctrine." *Mlynarski*, 213 Ill. App. 3d at 432.

¶ 57                                    b. The Burden of Proof

¶ 58             " 'The party who claims the privilege has the burden of showing the facts which give rise to the privilege.' " *Doe v. Township High School District 211*, 2015 IL App (1st) 140857, ¶ 70, 34 N.E.3d 652 (quoting *Mlynarski*, 213 Ill. App. 3d at 431); *Consolidation Coal*, 89 Ill. 2d at 119.

¶ 59             "A party claiming that discovery material is privileged may not merely assert that the matter is confidential and privileged; rather, he should support such a claim 'either by [(1)] producing the materials for an *in camera* inspection or [(2)] by submitting affidavits setting forth facts sufficient to establish the applicability of the privilege to the particular documents.' " *Youle v. Ryan*, 349 Ill. App. 3d 377, 382, 811 N.E.2d 1281, 1284-85 (2004) (quoting *Menoski v. Shih*, 242 Ill. App. 3d 117, 121, 612 N.E.2d 834, 836-37 (1993)); see also *Caterpillar, Inc. v. Volt Information Sciences, Inc.*, 2021 IL App (3d) 180664, ¶ 24 (noting that Illinois Supreme Court Rule 201(n) (eff. July 1, 2014) provides, "When information or documents are withheld from disclosure or discovery on a claim that they are privileged pursuant to a common law or statutory privilege, any such claim *** shall be supported by a description of the nature of the documents, communications or things not produced or disclosed ***.").

¶ 60             c. The Illinois Work Product Doctrine in Civil Proceedings

¶ 61             Illinois Supreme Court Rule 201(b)(2) (eff. July 1, 2014) describes the work product doctrine and states that "[m]aterial prepared by or for a party *in preparation for trial* is subject to discovery only if it does not contain or disclose the theories, mental impressions, or

litigation plans of the party's attorney." (Emphasis added.) Rule 201 constitutes a restatement of Illinois law, which provides for a narrow view of the work product doctrine. Ill. S. Ct. R. 201, Committee Comments (rev. June 1, 1995) (citing *Monier v. Chamberlain*, 35 Ill. 2d 351, 361, 221 N.E.2d 410, 417 (1966)).

¶ 62       Distinguishing the Illinois approach from the federal approach, the supreme court in *Monier*, 35 Ill. 2d at 359-60, made clear that the phrase "made in preparation for trial" represented only those materials "which reveal the shaping process by which the attorney has arranged the available evidence *for use in trial* as dictated by his training and experience." (Emphasis added and internal quotation marks omitted.)

¶ 63       In other words, the materials sought to be produced must have been created for pending or impending litigation in order to be protected from disclosure by the work product doctrine. See *Eizenga v. Unity Christian School of Fulton, Illinois*, 2016 IL App (3d) 150519, ¶ 33, 54 N.E.3d 907 (holding that letters, notes, and timesheets prepared by counsel prior to the filing of a complaint against him were not "created in preparation for any impending or pending litigation"); *Center Partners, Ltd. v. Growth Head GP, LLC*, 2011 IL App (1st) 110381, ¶¶ 21-22, 957 N.E.2d 496 (concluding that materials "prepared to assist or guide" a party in co-purchasing a business were not protected by the work product doctrine when, at the time they were prepared, the parties were not involved in litigation), *rev'd on other grounds*, 2012 IL 113107, 981 N.E.2d 345; *Lawndale Restoration Ltd. Partnership v. Acordia of Illinois, Inc.*, 367 Ill. App. 3d 24, 32, 853 N.E.2d 791, 799 (2006) (holding that an audit document created by outside counsel following the discovery of irregularities in some accounts was not made "in preparation for trial" despite actual litigation occurring years later). These cases establish that *the mere prospect* of litigation, as opposed to pending or impending litigation, is not enough for the work product doctrine to

apply.

¶ 64 Even if materials are made in preparation for trial, the work product doctrine protects only those materials that reveal the attorney's thinking. *Doe*, 2015 IL App (1st) 140857, ¶ 90. In an article surveying Illinois law on the work product doctrine, the authors wrote the following regarding the contents of materials protected by that doctrine:

> "In Illinois, the work product doctrine covers only opinion work product, which includes an attorney's theories, mental impressions or litigation plans and thus [does] not encompass[ ] much of the work generated on a party's behalf in preparation for trial. Illinois work product doctrine does not protect ordinary work product. Ordinary work product is material that does not include a party's attorney's theories, impressions, or plans." (Internal quotation marks omitted.) Ralph Ruebner & Katarina Durcova, *Survey of Illinois Law: Waiver of the Attorney-Client Privilege and Work Product Protection*, 37 S. Ill. U. L.J. 825, 831 (2013).

¶ 65 We agree with this scholarly analysis. See *Doe*, 2015 IL App (1st) 140857, ¶ 113 (recognizing the difference between freely discoverable ordinary work product and protected opinion work product); *Mlynarski*, 213 Ill. App. 3d at 432 ("In Illinois, however, only 'opinion work product,' matter which discloses the theories, mental impressions or litigation plans of a party's attorney, is protected from discovery.").

¶ 66 "[The Illinois] [S]upreme [C]ourt has distinguished between: memos made by counsel of his or her impressions of a prospective witness, which are protected; and verbatim statements of the witness, which are not." *Doe*, 2015 IL App (1st) 140857, ¶ 114; *Consolidation Coal*, 89 Ill. 2d at 109 ("memoranda made by counsel of his impression of a prospective witness" are distinguished from "verbatim statements of such witness"); *Monier*, 35 Ill. 2d at 360

("[M]emoranda made by counsel of his impression of a prospective witness, as distinguished from verbatim statements of such witness, trial briefs, documents revealing a particular marshalling of the evidentiary facts for presentment at the trial, and similar documents which reveal the attorney's 'mental processes' in shaping his theory of his client's cause, are documents 'made in preparation for trial' and exempt from discovery ***.").

¶ 67                                    4. *This Case*

¶ 68                                  a. In Preparation for Trial

¶ 69          As we have earlier discussed, the Illinois work product doctrine, not the federal work product doctrine, applies under the Act.

¶ 70          Under Illinois law, the work product doctrine requires that the material be made *in preparation for trial*. Ill. S. Ct. R. 201(b)(2) (eff. July 1, 2014). Applying this standard, the District did not meet its burden to show that Knittle made her interview notes in preparation for trial because (1) the District did not present any evidence that there was any pending or impending litigation and (2) hiring an attorney to conduct an investigation in itself is not indicative of pending litigation.

¶ 71          First, nothing in the record shows that litigation—which is commenced upon the filing of a complaint (735 ILCS 5/2-201 (West 2018))—was pending or impending at the time Knittle conducted her interviews. The record is devoid of evidence showing that any parent even threatened to take legal action against Russell or the District. On the contrary, the record suggests lower stakes than the District asserts because the parents merely "expressed that they were concerned for the welfare" of the students—a statement far short of threatening litigation. Furthermore, although the investigation could have resulted in Russell's termination and thus possible litigation from Russell, that possibility is not sufficient to demonstrate that litigation was

pending. The *possibility* of litigation is always present when an investigation resulting from parental complaints is conducted, but that possibility—without more—does not justify the application of the work product doctrine.

¶ 72    We suspect that complaints about teachers are not unusual, nor are internal investigations into such complaints. We do not view the complained-of conduct in this case to be so particularly egregious that an investigation into that conduct would likely provoke litigation. We add, however, that without the interview notes, one cannot be certain about the precise details of the complaints, and this uncertainty, in part, surely was a factor motivating the Union's request for those notes.

¶ 73    The District's hiring of an outside attorney to investigate Russell, without more, does not transform Knittle's interview notes into protected work product. The record contains nothing about how often the District hires attorneys for that purpose, why it hired an attorney to investigate Russell, or anything else regarding what the District's usual practice may be when conducting similar investigations. To allow the District's mere hiring of an attorney to warrant the application of the work product doctrine would allow the exception to consume the rule. By that we mean such a conclusion would effectively render nugatory the requirement of section 4.4 of the CBA that the District share interview notes with the Union.

¶ 74    In other words, the District's position is that disclosure of any interview notes created during an investigation would be discretionary as long as the District hired an attorney to conduct the interviews. Such a holding would also be inconsistent with Illinois precedent, which disfavors privileges and promotes the free exchange of information, particularly in labor cases. See *Chicago Board of Education*, 30 PERI ¶ 162 (IELRB 2012) (favoring the free flow of information between employers and unions); see also *In re Marriage of Daniels*, 240 Ill. App. 3d

314, 324-25, 607 N.E.2d 1255, 1262 (1992) (holding that privileges are disfavored).

¶ 75        Ultimately, the District did not meet its burden to demonstrate that (1) Knittle's interview notes were made in preparation for trial or (2) the interview notes contained Knittle's mental impressions or thoughts. This result is entirely foreseeable because the District did not submit the interview notes for *in camera* review or include affidavits detailing the protected material the interview notes contained. See *Mlynarski*, 213 Ill. App. 3d at 431 ("The party who claims the privilege has the burden of showing the facts which give rise to the privilege.").

¶ 76                              b. The Content of the Interview Notes

¶ 77        The District has likewise not provided any evidence to show that the content of the interview notes (the existence of which we must infer from the minimum discussion of facts in the parties' joint stipulation) contained Knittle's mental impressions. Instead, the District asserts that the mere fact that an attorney took the notes during an investigation is sufficient to carry the District's burden to show that the work product doctrine applies in this case. We disagree.

¶ 78        In support of its argument, the District cites to the supreme court decision in *Consolidation Coal* for the proposition that "notes regarding oral statements of witnesses, whether in the form of attorney's mental impressions or memoranda, necessarily reveal in varying degrees the attorney's mental processes in evaluating the communications." *Consolidation Coal*, 89 Ill. 2d at 109. However, this holding from *Consolidation Coal* is inapposite because the District in this case did not make the same showing that the interview notes in question were work product as did the party in *Consolidation Coal*.

¶ 79        In *Consolidation Coal*, the supreme court considered "whether counsel's notes and memoranda of employees or witnesses' oral statements which are not verbatim and are not reviewed, altered, corrected, or signed by these individuals are protected work-product." *Id.* After

the supreme court conducted its own *in camera* inspection of the notes, the supreme court recognized that the notes represented a mixture of factual material and attorney's "conclusions, characterizations and summaries," and thus were protected by the work product doctrine. *Id.* at 110; see also *Mlynarski*, 213 Ill. App. 3d at 433 (citing *Consolidation Coal*, 89 Ill. 2d at 109, and concluding that an attorney's memorandum was protected by the work product doctrine because it did not contain verbatim witness statements and was not "reviewed, adopted, altered or signed by any of the witnesses").

¶ 80      Here, the District did not present any evidence that Knittle's interview notes were not (1) verbatim witnesses' statements or (2) adopted by the witnesses. In fact, the District provides no evidence at all describing what Knittle's notes contained. The District could have, and should have, submitted the notes for *in camera* review by the ALJ or submitted affidavits detailing the notes' contents. *Youle*, 349 Ill. App. 3d at 382.

¶ 81      We conclude that the District did not meet its burden to show either that (1) Knittle's interview notes contained an attorney's mental impressions or (2) that they were made in preparation for litigation.

¶ 82                          III. CONCLUSION

¶ 83      For the reasons stated, we affirm the Board's decision.

¶ 84      Affirmed.

2022 IL App (4th) 210359

| | |
|---|---|
| **Decision Under Review:** | Petition for review of order of Illinois Educational Labor Relations Board, No. 19-CA-0053-C. |
| **Attorneys for Appellant:** | Jason T. Manning, Jack A. Jablonsky, and Kevin P. McKeown, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for petitioner. |
| **Attorneys for Appellee:** | Angie Cowan Hamada, of Allison, Slutsky & Kennedy, P.C., of Chicago, for respondent Deerfield Education Association, IEA-NEA.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for other respondent. |